# EXHIBIT B



Portfolio Media. Inc. | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# North Carolina Justice Anita Earls Opens Up About Diversity

By **Hannah Albarazi**

Law360 (June 20, 2023, 10:45 AM EDT) -- In an interview with Law360, North Carolina Supreme Court Justice Anita Earls discusses what's behind a glaring lack of diversity on the state's appellate bench and among advocates who argue before her court, and how the newest chief justice derailed initiatives addressing implicit bias and racial inequities in the state's justice system.



Justice Anita Earls

Justice Earls, a former civil rights attorney elected as a justice of the North Carolina Supreme Court in 2019, shared her perspective on being a Black female Democrat on a state Supreme Court that is largely white, male and, after last year's elections, Republican, when voters flipped the court's majority from 4-3 Democratic to 5-2 Republican.

In this conversation, Justice Earls shined a spotlight on the decision by North Carolina Chief Justice Paul Newby — who did not respond to Law360's request for comment — to discontinue efforts within the judiciary to address implicit bias and racial discrimination at a time when there remains a significant lack of diversity on the appellate bench and among those who argue before it.

A Law360 analysis found that North Carolina Supreme Court justices are 71% white males and that the state's Court of Appeals judges are 93% white and 60% male. A recent study by the state Solicitor General Ryan Y. Park likewise found that attorneys who argue before the state Supreme Court are 90% white and 70% male and do not reflect the state's diversity.

file:///C/...ustice%20Earls/North%20Carolina%20Justice%20Anita%20Earls%20Opens%20Up%20About%20Diversity%20-%20Law360.htm[8/14/2023 3:51:46 PM]

Case 1:23-cv-00734-WO-JEP    Document 1-2    Filed 08/29/23    Page 2 of 6

This interview has been edited for length and clarity.

## Why are oral advocates that come before the North Carolina Supreme Court overwhelmingly male and white, despite a diverse state population and state bar membership?

Part of it is the current pool of who's eligible to argue in front of us and then who decides who gets to do the arguments. But then beyond that: What is the pipeline to arguing in front of us? If you look at who is hired to serve as clerks to the justices … we have plenty of female clerks, but on racial diversity we're lacking. … For the term that just started in January … there were 14 or 15 law clerks serving in our court and no African Americans. One Latina.

I think another part of this, in terms of the gender and race discrepancies that you see, I really do think implicit bias is at play.

There have been cases where I have felt very uncomfortable on the bench because I feel like my colleagues are unfairly cutting off a female advocate. We have so few people of color argue, but in one case there was a Black woman who argued in front of us and I felt like she was being attacked unfairly, not allowed to answer the question, interrupted. It's not uniform. It's not in every case. And so it could certainly factor in the politics of the particular case that's being argued.

So when that is the culture of our court — that is to say, when the culture is that male advocates and advocates who reflect the majority of the court, white advocates, when they get more respect, when they are treated better —I think it filters into people's calculations about who should argue and who's likely to get the best reception and who can be the most persuasive.

I'm not suggesting that any of this is conscious, intentional, racial animus. But I do think that our court system, like any other court system, is made up of human beings and I believe the research that shows that we all have implicit biases.

## What efforts have been made to diversify the appellate bench, which is largely male and white?

Under the prior court, there was an equity committee looking at these issues. That committee was disbanded at the beginning of this year. That was an internal equity committee to look at just the North Carolina Supreme Court and our hiring practices. That's an issue, too.

The prior court had [also] issued an order appointing a Commission on Fairness and Equity in the North Carolina judicial system. It dealt with not only how we treat the public but how we operate internally. It dealt with gender as well as race. It was established by order of the court in October of 2020. And then in January of 2023, the chief justice refused to reappoint members of that committee.

There's been no attention to that because it's all been done very quietly. It's not like there was a big press conference …The new majority on the court didn't issue a new court order saying we're superseding the old order. … It's in line with the values of the current party in power in our court.

The new members of our court very much see themselves as a conservative bloc. They talk about themselves as "the conservatives." Their allegiance is to their ideology, not to the institution.

file:///C/...ustice%20Earls%20North%20Carolina%20Justice%20Anita%20Earls%20Opens%20Up%20About%20Diversity%20-%20Law360.htm[8/14/2023 3:51:46 PM]

Case 1:23-cv-00734-WO-JEP   Document 1-2   Filed 08/29/23   Page 3 of 6



An illustration hung in the North Carolina Supreme Court depicts a slate of current elected Republican jurists as superheroes: Supreme Court Chief Justice Paul Newby and Justices Philip Berger Jr. and Tamara Barringer and Court of Appeals Judges Chris Dillon, Jeffery Carpenter, Fred Gore, Jefferson Griffin and April Wood. Click to enlarge. (Courtesy of Robyn Sanders)

### Have you faced obstacles that you attribute to your gender or race on your journey to becoming an appellate advocate or Supreme Court judge?

Both. Yes.

I had to have very sharp elbows sometimes as I got further along in my career, to say, "Look, I have 25 years' experience. You're not going to shut me out of this litigation strategy decision." So, just to be in the position to ultimately be the person who gets to argue the case on appeal, there were

file:///C/...ustice%20Earls/North%20Carolina%20Justice%20Anita%20Earls%20Opens%20Up%20About%20Diversity%20-%20Law360.htm[8/14/2023 3:51:46 PM]

Case 1:23-cv-00734-WO-JEP   Document 1-2   Filed 08/29/23   Page 4 of 6

certainly challenges as a female litigator.

In terms of being on the court, interestingly, I didn't feel any barriers running for office. I didn't feel like voters had any preconceived notions that I couldn't be an appellate judge because I was a woman.

But I certainly think that now that I'm on the bench, I see ways in which I'm treated differently by my colleagues and during oral argument, and sometimes it's hard to separate out: Is this race or is this gender or is this because of my political views? Any one of those three or the combination of all three might be the explanation.

I've been interrupted by more junior colleagues and I've had to say, "Excuse me, I'm not finished with my question." And less often or less striking to me, but still occasionally happens is, advocates who won't let me get my question out. That just doesn't happen to my male colleagues.

There were two times when one of my colleagues publicly tried to embarrass me, and in the context of the case and the oral argument, that's just not only my perception. Other people in the courtroom at the time were shocked and surprised because that isn't how our court operates, at least in the past.

## Are there implicit bias trainings offered to North Carolina's jurists?

Well, there were.

I am co-chair of the Governor's Task Force on Racial Equity and Criminal Justice, [created] following George Floyd's murder in 2020. One of our first recommendations was that all judicial system actors have implicit bias and racial equity training.

The [University of North Carolina] School of Government … developed a curriculum. Some trial court judges attended their implicit bias training, and then when the new chief justice came into office in January 2021, he ended that by renegotiating the contract with the School of Government. It's no longer being offered to judges.

I think that it's part of the general antipathy towards seeing that racial issues matter in our justice system.

The current Chief Justice Newby — at the time [Senior Associate] Justice Newby — wrote a dissent to the order creating the Commission on Fairness and Equity, in which he basically said … that he thought the timing of the order was political, that the text of the order improperly prejudged issues of racial discrimination, and that it improperly inserts the judiciary into the policymaking arena.

So it's a very political issue. And the current party [in power] doesn't think that there are any problems of racial discrimination in our justice system.

And so why would you have training on implicit racial bias if there is no such thing as racial discrimination or racial bias, right? That's their worldview.

## What can be done to increase diversity on the bench?

It can be really challenging to figure out how you're going to run for office and keep a full-time job. Because for me, running for office was a full-time job, and I could only do it when I had the financial means to go without income for a year. It was only after 30 years of practicing law, with both my kids out of college, could I finally say, "I can go without an income for a year." So I think that's a barrier at the appellate level.

The fact that you have to campaign statewide to win the seat, you have to raise a lot of money. I had to raise $1.5 million. That was in 2018. That wouldn't be enough now. When we had public financing of statewide judicial appellate races, that was actually when you saw the bench diversify.

Case 1:23-cv-00734-WO-JEP   Document 1-2   Filed 08/29/23   Page 5 of 6

If you look at when did women start getting elected to our appellate courts in North Carolina. It was after public financing came in, and that has since ended. Elimination of that was part of the monster voter suppression bill in 2013.

## What would you tell women and people of color hoping to join North Carolina's appellate bench or appellate bar?

It would break my heart to think that people are discouraged from doing appellate work because they don't want to face these hurdles.

I think the message I would give is: It's twice as important that you do this. You can find resources to help you surmount the hurdles.

--Editing by Jill Coffey.

All Content © 2003-2023, Portfolio Media, Inc.

file:///C/...ustice%20Earls/North%20Carolina%20Justice%20Anita%20Earls%20Opens%20Up%20About%20Diversity%20-%20Law360.htm[8/14/2023 3:51:46 PM]

Case 1:23-cv-00734-WO-JEP Document 1-2 Filed 08/29/23 Page 6 of 6