IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-cv-00734-WO-JEP

| | |
|---|---|
| ANITA S. EARLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NORTH CAROLINA JUDICIAL | ) |
| STANDARDS COMMISSION; | ) |
| THE HONORABLE CHRIS | ) |
| DILLON, in his official capacity | ) |
| as Chair of the North Carolina Judicial | ) |
| Standards Commission; THE HONORABLE | ) |
| JEFFERY K. CARPENTER, in his official | ) |
| capacity as Vice Chair of the North Carolina | ) |
| Judicial Standards Commission; and the | ) |
| following Members of the North Carolina | ) |
| Judicial Standards Commission, each in his | ) |
| or her official capacity: THE HONORABLE | ) |
| JEFFERY B. FOSTER; THE HONORABLE | ) |
| DAWN M. LAYTON; THE HONORABLE | ) |
| JAMES H. FAISON III; THE HONORABLE | ) |
| TERESA VINCENT; MICHAEL CROWELL; | ) |
| MICHAEL T. GRACE; ALLISON MULLINS; | ) |
| LONNIE M. PLAYER JR.; JOHN M. CHECK; | ) |
| TALECE Y. HUNTER; DONALD L. | ) |
| PORTER; and RONALD L. SMITH, | ) |
| | ) |
| Defendants. | ) |

_____

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION
AND PLAINTIFF'S REQUEST FOR A STATUS CONFERENCE**

Plaintiff Anita S. Earls, by her undersigned counsel, hereby files her Response in

Opposition to Defendants' Motion for Extension. Plaintiff states to the Court as follows:

1. This Complaint in this action [Doc. 1], along with a fully briefed motion for preliminary injunction [Docs. 1, 3, & 4], was filed on August 29, 2023. The action is brought by an Associate Justice of the North Carolina Supreme Court seeking a declaratory judgment and injunction to stop Defendants, the North Carolina Judicial Standards Commission (the "Commission") and its constituent members, from investigating and potentially punishing her for exercising her First Amendment rights to speak on matters of substantial public concern.

2. In the Complaint (at ¶¶ 80-81), as well as in a Declaration in Support of her Preliminary Injunction Motion, Plaintiff has described the manner in which a series of Commission investigations into her has chilled her First Amendment rights by, among other things, causing her to turn down an invitation to write an article for a national publication, to avoid discussion of the issues of the racial and gender composition of state courts in response to a request to contribute an essay to the *Yale Law Review* forum, and to refrain from speaking publicly at a meeting of the Equal Access to Justice Commission concerning a proposal to extend a court rule that broadens the pool of advocates available to indigent litigants. (*See* Declaration of Anita S. Earls, sworn to August 28, 2023 [Doc. 3-1], at ¶¶ 20-21.) She also described that the effects of the Commission's investigations have interrupted her ability to perform her job as a Justice of the North Carolina Supreme Court and even to consider whether statements she makes in judicial opinions might subject her to discipline. (*Id*. at ¶ 22.)

3. On September 1, 2023, the General Counsel of the North Carolina Judicial Branch, in response to an inquiry from Plaintiff's counsel, reported that while the

2

Case 1:23-cv-00734-WO-JEP   Document 11   Filed 09/13/23   Page 2 of 6

Commission had not yet retained counsel (and that coordination of counsel was "more complicated than our normal course given the parties and allegations in this matter"), he was authorized to accept service of the summonses, complaint, and preliminary injunction motion.

4. As a result of that agreement, the Commission's response to the preliminary injunction motion is due on September 22, 2023.

5. The Commission's counsel did not contact Plaintiff's counsel until September 7, 2023. After an initial telephone discussion in which counsel discussed scheduling issues and Plaintiff's concerns about the continued chilling of her rights to free speech, Plaintiff's counsel indicated that Plaintiff's consent to any extension would need to be conditioned on assurances that the Commission would take no further steps on its investigation of Plaintiff pending the Court's determination of the preliminary injunction motion.

6. On September 11, 2023, counsel for the Commission followed up with a letter (attached hereto as Exhibit 1), stating the Commission intended to seek a two-week extension, but stating only that the Commission would "not take any investigation action until November 1, 2023, at the earliest." To be clear, the investigative action apparently contemplated by Defendants is a request for an investigatory interview with Plaintiff. Her decision to participate or not participate in a voluntary investigative interview has potentially significant implications for the outcome of any formal charges against her, as cooperation with the Commission (or corresponding failure to cooperate) is frequently cited as a reason justifying the level of sanction when a violation of the Code of Judicial

Conduct is found to have occurred. Additionally, preparation for, and attendance at, such an interview incurs further attorneys' fees and burdens on Plaintiff's time, interfering with her official duties which include opinion filing deadlines in October and two weeks of oral arguments in November (20 cases), as well as another opinion deadline at the end of November.

7. In a response to Defendants' counsel, also on September 11, 2023, Plaintiff's counsel indicated that Plaintiff would not consent to the extension request unless the Commission would agree to take no further action against her until the Court rules on the pending preliminary injunction motion.

8. The following day, September 12, 2023, the Commission's counsel stated that the "Commission will not agree to indefinitely postpone the investigation pending a ruling on injunctive relief. We will file a motion seeking a 14-day extension and represent in the motion that the Commission will not take further action before November 1." In response, counsel for Plaintiff indicated that it would oppose the extension motion.

9. Plaintiff's proposal concerning an extension was intended to accomplish three things: (1) provide the Commission's counsel with sufficient time to respond to the preliminary injunction; (2) provide the Court with sufficient time to decide the motion without facing an artificial deadline arbitrarily chosen by the Commission; and (3) minimize the chilling of Plaintiff's free-speech rights.

10. The Commission's proposal accomplishes only one of those goals, *i.e.*, time for its counsel to respond. At the same time, however, it creates an artificial November 1 deadline for the Court to enter any injunction blocking the challenged conduct. Under

4

Case 1:23-cv-00734-WO-JEP   Document 11   Filed 09/13/23   Page 4 of 6

the standard briefing schedule, that November 1 deadline is only 11 days after the preliminary injunction motion would fully briefed.

11. More importantly, the Commission's proposal ignores the continued chilling of Plaintiff's free-speech rights. Every day that goes by without an injunction imposes additional, irreparable harm on Plaintiff since the "[l]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *NAACP Alamance Cnty. Branch v. Peterman*, No. 1:20-CV-613, 2020 WL 4738015, at *6 (M.D.N.C. Aug. 14, 2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *cf. Kiser v. Reitz*, 765 F.3d 601, 607 n.2 (6th Cir. 2014) ("[Plaintiff] will suffer continuing injury *every day* that he is unable to engage in constitutionally protected commercial speech." (emphasis added)). And the Commission's proposed "solution" for Plaintiff as outlined in its counsel's letter – "[s]hould your client have questions about the application of the Judicial Code to a particular statement, the Commission frequently provides informal advisory opinions upon request to all members of the judiciary" (Ex. 1, at p. 1) – is nothing more than an invitation to participate in an unconstitutional prior restraint of speech in which the speaker must apply to governmental authority before engaging in the proposed communication. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 554 (1975).

12. The chilling of Plaintiff's speech is an ongoing harm. Between the date of this filing and November 1, Plaintiff has committed to seven different public or quasi-public professional speaking engagements, including audiences such as the Greensboro Bar Association, and a women judges panel at Duke University Law School. Each time

5

she speaks publicly, she risks further investigation by the Judicial Standards Commission. She must self-censor beyond what is reasonably expected of a judge in order to protect her right to serve in the office to which she was elected.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that:

(a) Defendants' extension motion be denied; and

(b) the Court convene as soon as reasonably practicable a telephonic status conference to discuss a schedule for briefing and a hearing on the motion for preliminary injunction and, if appropriate, the filing of a motion for a temporary restraining order so that the Court can deal expeditiously with the issues relating to preliminary relief.

This the 13th day of September, 2023.

By: /s/ Pressly M. Millen
Pressly M. Millen
State Bar No. 16178
Raymond M. Bennett
State Bar No. 36341
Samuel B. Hartzell
State Bar No. 49256

OF COUNSEL:

WOMBLE BOND DICKINSON (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
(919) 755-2100

Attorneys for Plaintiff Anita S. Earls