**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION No. 1:23-cv-00734-WO-JEP**

| | |
|---|---|
| ANITA S. EARLS, | |
| Plaintiff, | |
| v. | **BRIEF IN SUPPORT OF MOTION TO DISMISS** |
| NORTH CAROLINA JUDICIAL STANDARDS COMMISSION, *et al.*, | |
| Defendants. | |

Defendants, through counsel, respectfully submit this Brief in Support of the Motion to Dismiss.

## INTRODUCTION

The North Carolina Judicial Standards Commission (the "Commission") was created by the North Carolina General Assembly to support the integrity of the North Carolina judicial system. The Commission accomplishes this statutory mandate by advising and educating judges on the application of the Code of Judicial Conduct (the "Code"), as promulgated by the Supreme Court of North Carolina, and by conducting investigations into whether a judge may be in breach of the Code. The Commission is a nonpartisan body, consisting of members who are affiliated with the Democratic party and the Republican party, as well as unaffiliated voters.

The Complaint accuses the Commission of "target[ing]" Plaintiff in an attempt to silence Plaintiff's political speech. D.E. 4, at 9 n.2 ("Pltf. PI Br."). Far from singling out

Plaintiff for investigation, however, the Commission regularly considers whether certain speech by judges is consistent with the Code, both through confidential advisory opinions and confidential investigations. The Commission has offered consistent guidance on this topic to judges for years, advising that judges have broad rights in commenting on issues of the day, but that no judge should make unsupported accusations that a colleague is making decisions based on prejudices or biases, rather than the law and facts.

Consistent with this guidance, the Commission notified Plaintiff on August 15, 2023, that it had initiated a confidential formal investigation into statements attributed to her in an article that may be read to accuse her colleagues of "acting out of racial, gender, and/or political bias in some of their decision-making." D.E. 1 ("Compl."), Ex. A at 2. Plaintiff did not respond to the notice. Instead, Plaintiff waived confidentiality and filed this federal lawsuit, asking the Court to terminate the Commission's ongoing proceeding.

This lawsuit should be dismissed. *Younger v. Harris* and its progeny preclude a federal court from intruding on the Commission's ongoing proceedings except in narrow circumstances not present here. And even if the Court were to reach the merits, Plaintiff has failed to state a claim upon which relief can be granted.

## QUESTIONS PRESENTED

1. Do *Younger v. Harris* and its progeny require the Court to abstain from interfering with the Commission's ongoing proceeding?

2. Does Plaintiff's Complaint, accepting its allegations as true, assert a cognizable claim under the First Amendment and 42 U.S.C. § 1983?

2

## STATEMENT OF FACTS

The statement of facts is derived from Plaintiff's factual allegations, supplemented by the facts set forth in the Declaration of Brittany Pinkham ("Decl.").[1]

## I. THE COMMISSION

The Commission is a nonpartisan "arm" of the North Carolina Supreme Court, *In re Nowell*, 293 N.C. 235, 244 (1977), created by the General Assembly "to provide for the investigation and resolution of inquiries concerning the qualification or conduct of any judge or justice" of the North Carolina courts, N.C. Gen. Stat. § 7A-374.1. To that end, the Commission is empowered to issue advisory opinions to judges concerning the meaning and application of the Code. *Id.* § 7A-377(a6). And it is empowered to "investigate complaints, hear evidence, find facts, and make a recommendation" to the Supreme Court of North Carolina, when appropriate, for possible sanctions for violations of the Code. *In re Nowell*, 293 N.C. at 244; *see* N.C. Gen. Stat. § 7A-376(a), (b).

Most pertinent to this lawsuit, Canon 2A of the Code directs a judge to "conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2A. Canon 3 directs judges to "be unswayed by

---

[1] Courts in the Fourth Circuit "tend to analyze *Younger* motions under Rule 12(b)(1) instead of Rule 12(b)(6)." *Briggman v. Martin*, No. 21-cv-74, 2022 WL 1203822, at *1 (W.D. Va. Apr. 22, 2022). "The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). "[W]hen a court evaluates subject-matter jurisdiction under Rule 12(b)(1), it is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 155 (4th Cir. 2021) (brackets and internal quotation marks omitted).

3

partisan interests, public clamor, or fear of criticism." Canon 3A(1). Meanwhile, Canon 7 recognizes that judges "may engage in political activity consistent with the judge's status as a public official," including endorsing other candidates, speaking at political rallies, and "any other constitutionally protected political activity." Canon 7(B).

### A. The Commission's Composition

The Commission consists of six judges appointed by the Chief Justice, four attorneys appointed by the State Bar Counsel, and four non-lawyer citizens, of whom two are appointed by the Governor and two by the General Assembly. N.C. Gen. Stat. § 7A-375(a). The current Commission has as many members affiliated with the Republican Party as with the Democratic Party. Decl. ¶ 4. The chair of the Commission, the Honorable Chris Dillon, was appointed as chair by former-North Carolina Chief Justice Cheri Beasley. Decl. ¶ 3. The 14 members of the Commission are divided into two panels of seven members. *See* Comm'n Rule 2(b). The composition of the two panels changes only upon a vacancy and reappointment. Decl. ¶ 5.[2] The Commission is assisted in its work by a small permanent staff. *See* Decl. ¶ 1.

### B. The Commission's Advisory Opinions

The bulk of the Commission's time and efforts are focused on providing prospective guidance to judges on applying the Code to their personal and professional activities.

---

[2] After the Complaint was filed, the General Assembly enacted the Current Operations Appropriations Act of 2023 on September 22, 2023, which includes a section that modifies the Commission's membership going forward by replacing the four State Bar appointees with four judges appointed by the General Assembly. *See* H.R. 259, Gen. Assem., Reg. Sess. (N.C. 2023), § 16.20. Although the Act became law on October 3, 2023, *see* N.C. Const., art. XXII, § 7, no new members have been appointed.

4

Decl. ¶ 6. The Commission staff provides confidential informal advisory opinions upon request. *Id.* In 2022, the Commission staff issued 283 informal advisory opinions to judges. *Id.* Each informal advisory opinion is later reviewed by a Commission panel, which can vote to withdraw or modify the guidance. Comm'n Rule 8(b)(5). An advisory opinion offers a safe harbor for a judge, who can rely on the opinion unless notified that the Commission has withdrawn or modified the opinion. *See id.*; Decl. ¶ 7.

Because judges must balance their role as judicial officers with the need to run in public elections to retain that office, judges often seek advice on political conduct. Decl. ¶ 9. The Commission regularly fields and responds to questions from judges about political speech. *Id.* The Commission has consistently provided the same guidance to all judges: judges must avoid making unsubstantiated statements that cast doubt on the integrity and impartiality of members of the judicial system. *See, e.g.*, Decl. ¶ 13. Indeed, pertinent to this lawsuit, the Commission offered the same advice in 2020 to judges who inquired about making public statements on racial equity and implicit biases in the court system. *See, e.g.*, Decl. ¶ 14.

Notably, just this summer, in response to a request for an advisory opinion, the Commission cautioned against stating that an election opponent is "an activist Democrat." Decl. ¶ 6. The Commission observed that such a remark might suggest that the opponent was being "swayed in their decision[s] by 'partisan interests'" in violation of Canon 3. Decl. ¶ 16. The Commission advised that doing so could be problematic under Canon 2A:

> [U]nless a judge who is a candidate has specific facts that a judicial candidate ruled in a particular way based on an inappropriate basis, a judge should refrain from suggesting

5

> such about a sitting judge, as such comment would go against
> a judge's duty to "promote[] public confidence in the integrity
> and impartiality of the judiciary."

*Id.*

### C. The Commission's Investigative Proceedings

The Commission's investigative proceedings are initiated either by a confidential complaint or on the Commission's own motion. N.C. Gen. Stat. § 7A-377(a). A complaint is reviewed by a panel of the Commission to determine whether the alleged conduct would violate the Code. Comm'n Rule 9(b). If not, the investigative panel may summarily dismiss the complaint. Comm'n Rule 9(a), (b). For complaints not summarily dismissed, the investigative panel either asks Commission staff to conduct an informal investigation regarding the allegations or opens a formal investigation. Comm'n Rule 10(a). At least five of the investigative panel's seven members must concur that a complaint warrants a formal investigation. Comm'n Rule 10(a).

When a formal investigation is commenced, the investigative panel provides the judge written notice of the complaint and the alleged violation of the Code. Comm'n Rules 9(c), 10(c)(1). A judge may then respond to the notice and provide information. Comm'n Rule 10(c)(3). As a general matter, unless a proceeding reaches a formal investigation, the matter is dismissed without the judge ever learning of the complaint or offering any response. Comm'n Rule 9(c); *see* Decl. ¶ 18. In the ordinary course, then, opening a formal investigation is the only way for the Commission to learn from the judge about the events giving rise to the complaint. Decl. ¶ 18.

6

After a formal investigation, the investigative panel determines whether there is probable cause of a Code violation that would rise to the level of public reprimand or discipline. Comm'n Rule 12(a); *see* N.C. Gen. Stat. § 7A-376(a). A vote of five members is required to make that finding. Comm'n Rule 12(a). If the panel does not make such a finding, it dismisses the complaint with or without a confidential letter of caution, as it deems appropriate. N.C. Gen. Stat. § 7A-377(a3). If the panel determines there is probable cause of such a violation, it issues formal charges. N.C. Gen. Stat. § 7A-377(a5).

If charges are issued, the matter transitions to the other panel for a disciplinary hearing. Comm'n Rule 12(b)(4). In conducting the hearing, the disciplinary panel has the power to call witnesses, issue oaths, subpoena documents, and punish a party for contempt. N.C. Gen. Stat. § 7A-377(d); Comm'n Rule 20. At the conclusion of the hearing, the panel votes on whether to recommend public reprimand or discipline to the state Supreme Court. Comm'n Rule 21(a); *see* N.C. Gen. Stat. § 7A-377(a5). Five votes are required to recommend any action by the Supreme Court. *Id.*

Finally, if the Commission recommends public reprimand or discipline, the record is transferred to the Supreme Court. Before the Supreme Court, the judge can file briefs and make oral arguments concerning the recommendation. N.C. Gen. Stat. § 7A-377(a5). The Court "is not bound by the recommendations of the Commission," but instead exercises its "own judgment in arriving at a disciplinary decision." *In re Inquiry Concerning a Judge, No. 17-143*, 372 N.C. 123, 135 (2019). A majority vote of the Justices is required to impose any public reprimand or discipline. N.C. Gen. Stat. § 7A-377(a5).

7

In 2022, 560 complaints were pending before the Commission. Decl. ¶ 17. The vast majority were dismissed after an initial review. Decl. ¶ 18. Only 12 complaints proceeded beyond an investigation to a disciplinary hearing. Decl. ¶ 19. In 2022, the Commission did not make a single recommendation for discipline to the Supreme Court. Decl. ¶ 20.

## II. FACTUAL BACKGROUND

### A. The Commission's Initial Proceeding

On March 20, 2023, the Commission issued a notice to Plaintiff that it was conducting a formal investigation into a complaint filed with the Commission regarding allegations that Plaintiff had revealed confidential deliberations that had occurred during a Supreme Court conference. Compl., Ex. C; *see* Decl. ¶ 22. Upon receiving the notice, Plaintiff submitted a letter stating that, in her view, the deliberations that Plaintiff had revealed were not customarily considered confidential. Compl. ¶ 70, Ex. D. Upon consideration of the information submitted by Plaintiff and discovered during the investigation, the investigative panel voted to dismiss the complaint. *Id.* ¶ 73. The Commission informed Plaintiff of its decision in mid-May 2023. *See* Decl. ¶ 23. The Commission also reminded Plaintiff of the Canon 2A requirement that judges act in a manner that promotes public confidence in the judiciary's integrity and impartiality. *See* Compl. ¶¶ 73–76; Decl. ¶ 23.

### B. Plaintiff's Subsequent Public Statements

Shortly thereafter, Plaintiff gave an interview to Law360 titled "North Carolina Justice Anita Earls Opens Up About Diversity," which was published on June 20, 2023 (the "Article"). Compl. ¶ 50, Ex. B. Plaintiff describes the Article as consisting of

"measured and nuanced" statements about the "imperfections or defects in the judicial system," Compl. ¶ 64. And to be sure, Plaintiff expresses her concerns about the lack of diversity among Supreme Court law clerks and advocates. *See id.*, Ex. B. And Plaintiff expresses disagreement with the Supreme Court's discontinuation of certain diversity initiatives that she supported. *See id.*, Ex. B.

But the Article also includes several statements that might be read to accuse Supreme Court colleagues of acting on the basis of certain racial, gender, or partisan biases. For example, the Article represents Plaintiff as saying, regarding interruptions by colleagues during oral argument, that "sometimes it's hard to separate out: Is this race or is this gender or is this because of my political views? Any one of those three or the combination of all three might be the explanation." *Id.*, Ex. B. Plaintiff is further quoted as saying that "[t]he new members of our court very much see themselves as a conservative bloc" and that their "allegiance is to their ideology, not to the institution." *Id.*, Ex. B.

## C.    The Commission's Pending Investigation

On August 15, 2023, the Commission notified Plaintiff that it was conducting a formal investigation into certain statements in the Article. *See id.*, Ex. A. The notice informed Plaintiff that the investigation was limited to statements that "appear to allege that [Plaintiff's] Supreme Court colleagues are acting out of racial, gender, and/or political bias in some of their decision-making." *Id.*, Ex. A at 2. Citing to Canon 2A, the notice explains "a judge should not publicly suggest that another judge before whom litigants are appearing is making decisions based on some improper basis, unless the criticizing judge knows this to be the case." *Id.* at 2–3. The notice acknowledges that "there are

9

circumstances where a judge may publicly criticize another judge's judicial philosophy and decision-making process." *Id.*, Ex. A (citing *Republican Party of Minnesota v. White*, 536 U.S. 765 (2002)). But, the notice explains, "publicly alleging that another judge makes decisions based on a motivation not allowed under the Canons without some quantum of definitive proof runs contrary to a judge's duty to promote public confidence in the impartiality of the judiciary." *Id*. Plaintiff filed this lawsuit in response.

## ARGUMENT

Over 50 years ago, the Supreme Court recognized in *Younger v. Harris*, 401 U.S. 37 (1971), that federal courts should not enjoin ongoing state judicial proceedings. The Court held subsequently that the doctrine extends to state ethics proceedings even when those proceedings are alleged to infringe on the plaintiff's First Amendment right to criticize the state judiciary. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). *Younger* abstention applies here and requires dismissal of the case. In the alternative, the case should be dismissed because Plaintiff has failed to state a claim upon which relief can be granted.

## I.   *YOUNGER* ABSTENTION REQUIRES THIS CASE TO BE DISMISSED

Federalism is "a fundamental principle under our Constitution" that "requires that federal courts respect the sovereignty of their state counterparts. One way federal courts do this is through the doctrine of abstention." *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 93 (4th Cir. 2022). *Younger* abstention is "founded on the premise that ordinarily a pending state [proceeding] provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." *Kugler v. Helfant*, 421 U.S. 117, 124 (1975); *see Air Evac*

10

*EMS, Inc.*, 37 F.4th at 95 ("[S]tate courts are fully competent to decide issues of federal law." (citation omitted)). Importantly, that premise equally applies to First Amendment rights. *See In re Kunstler*, 914 F.2d 505, 517 (4th Cir. 1990); *Suggs v. Brannon*, 804 F.2d 274, 278–79 (4th Cir. 1986); *see also Middlesex*, 457 U.S. at 431 (applying *Younger* abstention to lawsuit asserting First Amendment claims).

To determine whether *Younger* abstention applies, Fourth Circuit precedent requires a court to first determine whether a plaintiff is seeking to enjoin one of the categories of important state proceedings that may warrant abstention. *See Jonathan R. by Dixmon v. Justice*, 41 F.4th 316, 329 (4th Cir. 2022). If the proceeding is the type of proceeding to which *Younger* applies, the Court must then consider the so-called "*Middlesex* factors": "(1) whether there is an ongoing state judicial proceeding; (2) whether that state proceeding implicates important state interests; and (3) whether that state proceeding provides an adequate opportunity to raise constitutional challenges." *Air Evac EMS, Inc.*, 37 F.4th at 96 (quotation cleaned up) (citation omitted). If each factor is satisfied, *Younger* mandates that a federal court abstain from exercising jurisdiction, absent "extraordinary" circumstances. *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006).

Here, abstention is required under the *Younger* doctrine. First, the Commission's proceeding concerning Plaintiff's statements is the type of proceeding to which *Younger* has repeatedly been held to apply. Second, each of the *Middlesex* factors is satisfied: the proceeding is ongoing; North Carolina has a vital interest in protecting the integrity of its judicial system; and the Commission's proceeding offers Plaintiff adequate opportunity to raise her First Amendment challenges. Finally, there are no extraordinary circumstances

11

that would justify the Court's interference in the ongoing proceeding. Because *Younger* applies, this case should be dismissed with prejudice. *See Nivens*, 444 F.3d at 247.

### A. *Younger* Abstention Applies To The Commission's Proceedings

The Commission's investigative proceedings plainly qualify as the type of proceeding to which *Younger* may apply. In *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court described three categories of state proceedings that may warrant *Younger* abstention: "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions" (*e.g.*, contempt proceedings). This case concerns a "civil enforcement proceeding." Such proceedings, the Court explained, typically concern whether "to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id.* at 79 (citing *Middlesex*, *supra*). "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Id.* (citing, *e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619 (1986)). And such proceedings commonly involve an investigation that may "culminat[e] in the filing of a formal complaint or charges." *Id.* at 80 (citing *Middlesex*, *supra*).

The Commission's disciplinary proceedings bear all of these hallmarks of a "civil enforcement proceeding," as *Sprint* describes. The Commission is "an arm of the court to conduct hearings for the purpose of aiding the [state] Supreme Court in determining whether a judge is unfit or unsuitable" for office. *In re Nowell*, 293 N.C. at 244. Where the Commission finds that a judge has violated the Code, the Commission may recommend to the state Supreme Court a public reprimand, censure, suspension, or removal. N.C. Gen.

12

Stat. § 7A-376. The purpose of its proceedings therefore is to determine whether a judge has engaged in "some wrongful act" that warrants sanction. *Sprint*, 571 U.S. at 79. Moreover, although preliminary inquiries can be initiated by an anonymous complainant or the Commission itself, N.C. Gen. Stat. § 7A-377(a), the Commission becomes the prosecuting party if the proceeding advances to a disciplinary hearing. *See* Comm'n Rule 3(d)(4). And upon receiving a complaint, the Commission is required to make an investigation, *see* N.C. Gen. Stat. § 7-377(a), that may culminate in the filing of formal charges and a disciplinary hearing, *see id.* § 7A-377(a5).

The Supreme Court's decision in *Middlesex* forecloses any debate whether the Commission's proceedings fit within *Younger*. In that case, an attorney "took part in a press conference, making statements critical of the trial and of the trial judge's judicial temperament and racial insensitivity." *Middlesex*, 457 U.S. at 428. A bar complaint was filed against the attorney with the Middlesex County Ethics Committee, accusing him of violating New Jersey's code of professional conduct that prohibited a lawyer from "engag[ing] in conduct that is prejudicial to the administration of justice." *Id.* (brackets omitted). Rather than answer that complaint, the attorney filed a lawsuit in federal court seeking to enjoin the Committee from continuing with its proceedings on the grounds that the application of the code of professional conduct was unconstitutional on free speech and vagueness grounds. *Id.* at 429.

The Supreme Court held that *Younger* applied. *Id.* at 425. The Court explained that the ethics committee acted "as the arm" of the state supreme court "performing the function of receiving and investigating complaints and holding hearings" to determine whether

13

attorneys had violated the state's ethical standards for members of the bar. *Id.* at 433. It noted that proceedings before the committee were "initiated by filing a complaint" with the committee. *Id.* It observed that, where the committee finds that a violation had occurred, it was required to either issue a private letter reprimand or issue a recommendation for greater discipline. *Id.* at 427. And it noted that a recommendation for any discipline beyond a private reprimand was ultimately reviewed by the state supreme court. *Id.*; *see Sprint*, 571 U.S. at 81 (similarly describing the *Middlesex* proceedings). The Court concluded that such proceedings were "of a character to warrant federal-court deference." *Middlesex*, 457 U.S. at 433–34. So it is here.

### B. The *Middlesex* Factors Are Satisfied

Not only are the Commission's proceedings the type of proceedings to which *Younger* abstention applies, the circumstances of the proceedings at issue satisfy each of the *Middlesex* factors for determining whether abstention is required here.

### 1. The Commission's proceeding is ongoing

First, the Commission's disciplinary proceeding concerning Plaintiff's comments is plainly "ongoing." *Air Evac EMS, Inc.*, 37 F.4th at 96. The Fourth Circuit has previously held that the filing of a complaint with a disciplinary commission is sufficient to initiate a pending proceeding that triggers *Younger* abstention. *See ACLU v. Bozardt*, 539 F.2d 340, 342 (4th Cir. 1976). Here, a panel of the Commission has voted to initiate a formal investigation regarding certain statements in the Article. Decl. ¶ 24; Compl. ¶ 77. After receiving notice of the investigation, Plaintiff filed this suit regarding "[t]he Commission's continuing efforts to investigate" the Article, asking the Court to enjoin any "further

14

investigation." Compl. ¶¶ 77–78; *Id.* Prayer for Relief ¶ B. Plaintiff's own pleadings thus acknowledge the proceeding is ongoing.

### 2. The Commission's proceeding implicates vital state interests

Second, the Commission's investigative proceedings also concern a matter of "vital" interest to North Carolina: the public's confidence in the integrity of the judicial system. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445 (2015). The Fourth Circuit has long recognized "the state's ability to operate its own judicial system" as "a vital interest for *Younger* purposes." *Harper v. Pub. Serv. Comm'n*, 396 F.3d 348, 352 (4th Cir. 2005); *see Juidice v. Vail*, 430 U.S. 327, 335 (1977) (holding "the administration of a State's judicial system" is a state interest warranting abstention). More recently, in *Williams-Yulee*, the Supreme Court recognized, in the First Amendment context, a state's "compelling interest in preserving public confidence in the integrity of the judiciary," 575 U.S. at 444, adding that "public perception of judicial integrity is a state interest of the highest order," *id.* at 446.

### 3. The Commission's proceedings provide Plaintiff an adequate opportunity to raise constitutional objections

Third, the Commission's proceedings provide judges an adequate opportunity to raise constitutional objections. *See Air Evac EMS, Inc.*, 37 F.4th at 96. Again, the *Middlesex* decision itself is instructive. In response to the attorney's argument there that "there was no opportunity in the state disciplinary proceedings to raise his federal constitutional challenge to the disciplinary rules," *id.* at 435, the Supreme Court observed that the attorney "failed even to *attempt* to raise any federal constitutional challenge in the

state proceedings." *Id.* (emphasis in original). The *Middlesex* Court further noted that nothing "indicate[d] that the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees." *Id.* Finally, the Supreme Court added that, in any event, an attorney subject to sanction was permitted to seek review by the New Jersey Supreme Court of any constitutional objections. *Id.* at 435–36; *see Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. at 627 (1986) ("[F]ederal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court." (citing *Middlesex*, *supra*)).

Each of those observations also apply here. As with the attorney in *Middlesex*, Plaintiff has so far declined to raise any constitutional objection to the Commission itself, opting instead to file a federal lawsuit. Nevertheless, nothing indicates that the Committee, nearly *all* of whom are lawyers or judges, would refuse to consider a constitutional objection to any sanction. To the contrary, Canon 7 of the Code *requires* the Commission to consider constitutional principles in applying the Code. *See* Canon 7(B) (6) (permitting a judge or candidate to "engage in … any constitutionally protected political activity"). In addition, no judge can be sanctioned without review and determination of the North Carolina Supreme Court, which can also consider constitutional objections. *See* N.C. Gen. Stat. § 7A-377(a5); Comm'n Rule 22.

Plaintiff asserts that First Amendment concerns cannot be considered by the Commission itself because "the Commission, by statute, 'is limited to reviewing judicial

16

conduct, not matters of law.'" Compl. ¶ 38 (quoting N.C. Gen. Stat. § 7A-377(a)). But

Plaintiff misunderstands that statutory provision. Section 7A-377(a) reads in pertinent part:

> The Commission shall not make an investigation, whether initiated upon its own motion or by written complaint of a citizen of this State, when the motion or complaint is based substantially on a legal ruling by a district or superior court judge and the legal ruling has not yet been reviewed and ruled on by either the North Carolina Court of Appeals or the North Carolina Supreme Court. The Commission is limited to reviewing judicial conduct, not matters of law.

N.C. Gen. Stat. § 7A-377(a). Section 7A-377(a) merely makes clear that the Commission

is not a court of error correction, to which litigants can object to an unfavorable legal ruling

from a judge. The Commission reviews a judge's *conduct*, not the judge's *legal analysis*.

Indeed, consistent with Section 7A-377(a) and Canon 7, the notice Plaintiff received

acknowledged that the First Amendment constrains how the Code might restrict a judge's

political speech. *See* Compl., Ex. A (citing *Republican Party of Minnesota v. White*, *supra*).

Finally, "the underlying consideration of the *Younger* rule is the recognition that

any federal claim properly asserted in and rejected by the state court is subject to review

by the United States Supreme Court." *ACLU v. Bozardt*, 539 F.2d 340, 342 (4th Cir. 1976)

(citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 605 (1975)). Because Plaintiff has the right

to ask the Supreme Court to review the constitutionality of the North Carolina Supreme

Court's final determination of any possible sanction, *see* 28 U.S.C. § 1257, the *Younger*

doctrine "bars relief" from federal district courts. *Bozardt*, 539 F.2d at 342.

17

**C.     No Exceptional Circumstances Warrant The Federal Judiciary's Intervention In The Ongoing Proceeding**

This lawsuit does not present any of the special circumstances in which abstention might not be required. *See Nivens*, 444 F.3d at 241. Such circumstances exist only where there is: (1) "bad faith or harassment by state officials responsible for the prosecution"; (2) "a statute that is flagrantly and patently violative of express constitutional prohibitions"; or (3) "other extraordinary circumstances or unusual situations." *Air Evac EMS, Inc.*, 37 F.4th at 96 (quotation cleaned up). No such circumstances exist here.

To start, Plaintiff does not allege that Canons 2 and 3A are "flagrantly and patently violative of express constitutional prohibitions." *Nivens*, 444 F.3d at 241 (internal quotation marks omitted). To satisfy this standard, the challenged law must violate the constitution "'in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Younger*, 401 U.S. at 53–54 (quoting *Watson v. Buck*, 313 U.S. 387, 402 (1941)). Plaintiff—whose Complaint alleges only that Canons 2 and 3A violate the First Amendment as applied to her particular statements, *see* Compl. ¶ 83—does not contend that Canons 2 and 3A are wholly and inescapably unconstitutional in every application. Therefore, this rare exception to *Younger* abstention is not applicable here.

Similarly, Plaintiff does not allege that "other extraordinary circumstances exist that present a threat of immediate and irreparable injury." *Nivens*, 444 F.3d at 241 (internal quotation marks omitted). The Supreme Court has made clear that such injury must be not only irreparable, but also "both great and immediate." *Younger*, 401 U.S. at 46 (internal

18

quotation marks omitted). Indeed, the *Younger* Court explicitly held that the two types of injury that Plaintiff claims here—the inconvenience of a disciplinary proceeding and the chilling of her speech, *see* Compl. ¶ 86—are insufficient to overcome *Younger* abstention. To justify intervention, as the Court explained, the injury to a plaintiff must go beyond "the cost, anxiety, and inconvenience of having to defend against a single" proceeding, 401 U.S. at 46—harms that are "incidental to every … proceeding brought lawfully and in good faith," *id.* at 47 (internal quotation marks omitted). Nor does any "'chilling effect'" that "'inhibit[s] the full exercise of First Amendment freedoms'" "by itself justify federal intervention." *Id.* at 50 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486, 487 (1965)). Therefore, this exception is also inapplicable to Plaintiff.

Finally, the Commission's disciplinary proceedings were not commenced in bad faith. To avoid *Younger* abstention, the plaintiff has the burden of demonstrating that the state proceeding was undertaken in bad faith. *Juidice*, 430 U.S. at 338. Plaintiff accuses the Commission of acting in bad faith by "attempting to silence [her]—a sitting Associate Justice running for reelection—by using repeated, targeted, and unjustified investigations as a tool to dissuade her from speaking out." Pl.'s Prelim. Inj. Br. 9 n.2. But that unsubstantiated accusation provides no basis for this suit.

To start, the Supreme Court has explained that bad faith exists when the federal plaintiffs have been targeted "without any hope of ultimate success." *Dombrowski*, 380 U.S. at 490. For example, the Seventh Circuit found bad faith prosecution when an election board "attempt[ed] to enforce a law that a federal court has already told the Board in a final judgment is unconstitutional." *Mulholland v. Marion Cnty. Election Bd.*, 746 F.3d 811, 819

19

(7th Cir. 2014). Here, Plaintiff contends that nothing in the Article violates Canons 2A or 3. *See, e.g.*, Compl. ¶ 62. But the Commission's investigation into that question is consistent with advice it has consistently offered other judges and with existing judicial precedent, including an opinion of the state Supreme Court publicly reprimanding a judge for, among other things, accusing a colleague of acting on racial bias. *See In re Inquiry Concerning a Judge, No. 17-143*, 372 N.C. at 130–31 (Earls, J.).

Nor is there any basis for Plaintiff's accusation that the Commission has engaged in "repeated" and "targeted" investigations of her. Pl.'s Prelim. Inj. Br. 9 n.2. Notably, the Complaint never suggests any motivation the Commission would have for targeting Plaintiff. And there is no reason to conclude it has singled Plaintiff out. Plaintiff is one of many judges with whom the Commission has engaged regarding their public statements, Decl. ¶ 12, and (apart from her decision to waive the protections of confidentiality and file this lawsuit) Plaintiff's engagement with the Commission has been unremarkable. The Commission first investigated a complaint regarding Plaintiff's alleged divulgence of confidential information, as required by statute. Compl. ¶ 22. After Plaintiff submitted a letter explaining that there was no written rule or clear consensus on whether confidentiality attached to the information Plaintiff had shared, the Commission dismissed the complaint. *See id.* ¶ 23 & Ex. D. And the Commission's current investigation is limited to statements Plaintiff made that appear to allege colleagues are making decisions based on impermissible biases, *id.*, Ex. A, contrary to the guidance the Commission has provided to numerous other judges. Decl. ¶ 16. Two routine investigations regarding a judge's public statements are far from exceptional and are not proof of bad faith prosecution.

Because each of the prerequisites for *Younger* abstention apply to the Commission's proceedings and there exist no special circumstances for proceeding in the face of *Younger*, this case should be dismissed with prejudice.

## II.   PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Even if *Younger* did not require dismissal, the Court should dismiss the Complaint because Plaintiff has failed to assert a legally cognizable claim. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering such a motion, a court must accept the complaint's factual allegations as true. *Id.* at 678. But a court need not accept mere legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Id*. As explained more fully in the Commission's response to Plaintiff's motion for a preliminary injunction, *see* Br. in Opp. to Mot. for Prelim. Inj. ("PI Opp."), Plaintiff's Section 1983 claim has several flaws, each of which provides an independent ground for dismissal.

### A.   The Commission's Mere Investigation Does Not Implicate The First Amendment

Plaintiff alleges that the Commission has initiated this investigation in retaliation for engaging in protected First Amendment activity. To state such a claim, Plaintiff must establish that she has suffered an adverse action due to her speech. *E.g.*, *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). An "adverse action" is official conduct sufficiently serious to deter the speech of "a person of ordinary

21

firmness." *Id.* at 500. A confidential investigation is not an adverse action. *See Laird v. Tatum*, 408 U.S. 1, 10–11 (1972). Indeed, even if the Commission's investigation were to lead to a private letter of caution, such a response would not be a material adverse action. *See, e.g.*, *Hous. Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1260 (2022); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).[3]

## B.    The Commission's Investigation Survives Strict Scrutiny

Even assuming a confidential investigation by the Commission could implicate the First Amendment, a restriction on speech is permitted if it passes strict scrutiny. *Williams-Yulee*, 575 U.S. at 443–44. To survive strict scrutiny, the Commission's investigation of Plaintiff must be "(1) narrowly tailored, to serve (2) a compelling state interest." *Republican Party of Minnesota*, 536 U.S. at 775. North Carolina has a compelling interest in "'protecting the integrity of the judiciary' and 'maintaining the public's confidence in an impartial judiciary.'" *Williams-Yulee*, 575 U.S. at 445 (citation omitted). The Commission is investigating whether Plaintiff made unsupported accusations that her colleagues make decisions based on prejudices rather than merits, which means the Commission's proceeding is targeted only at statements that undermine the public's confidence in the impartiality of the judiciary.[4]

## C.    Plaintiff's Vagueness Arguments Are Premature And Unpersuasive

Plaintiff's vagueness arguments provide no further grounds for the First Amendment claim. Plaintiff alleges that the Commission's *application* of the Judicial Code

---

[3] *See* PI Opp. 11–12.
[4] *See* PI Opp. 13–14.

22

to her statements is unconstitutionally vague. But the Commission has not yet applied the Judicial Code to any of Plaintiff's speech. It is merely investigating whether the Code applies to specific comments and, if so, the appropriate response. Moreover, even if the Commission had applied the Code to any comments in the Article, that would provide no basis for relief here. If, as a matter of state law, Canon 2A were unclear, "*Pullman* abstention requires federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling." *Nivens*, 444 F.3d at 245.

In any event, Canon 2A is not unconstitutionally vague. "[A] law is not void for vagueness so long as it '(1) establishes minimal guidelines to govern law enforcement, and (2) gives reasonable notice of the proscribed conduct.'" *Recht v. Morrisey*, 32 F.4th 398, 415 (4th Cir.), *cert. denied*, 143 S. Ct. 527 (2022) (citation omitted). Plaintiff has more reasonable notice than most of the proscribed conduct, having signed an opinion that concluded a judge who, among other things, publicly criticized the chief judge and accused him of racial bias had violated Canon 2A. *See In re Inquiry Concerning a Judge, No. 17-143*, 372 N.C. at 130–31. That binding decision provides the guidance necessary to avoid unconstitutional vagueness.[5]

## D.    Plaintiff Cannot Satisfy Additional Elements Of The Section 1983 Claim

The Supreme Court has repeatedly held that the elements of a Section 1983 claim are based on "the most analogous tort as of 1871." *Thompson v. Clark*, 142 S. Ct. 1332,

---

[5]  *See* PI Opp. 16–18.

1337 (2022) (internal quotations marks omitted). The most analogous tort to Plaintiff's Section 1983 claim is that of malicious prosecution. Common-law malicious prosecution requires a plaintiff to establish "(i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, and (iii) the prosecution 'terminated in the acquittal or discharge of the accused." *Id.* at 1338 (quotation cleaned up). Plaintiff has not pleaded any of those elements and cannot possibly allege the last because the Commission's proceeding has not reached any kind of disposition.[6]

## CONCLUSION

For the foregoing reasons, the Commission asks that the Court dismiss with prejudice Plaintiff's Complaint.

---

[6] *See* PI Opp. 18–20.

This the 6th day of October, 2023.

Respectfully submitted,

/s/ Craig D. Schauer
Craig D. Schauer (NC Bar No. 41571)
W. Michael Dowling (NC Bar No. 42790)
DOWLING PLLC
3801 Lake Boone Tr., Suite 260
Raleigh, North Carolina 27607
Telephone: (919) 529-3351
cschauer@dowlingfirm.com

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com

Jodie Herrmann Lawson (NC Bar No. 42900)
Katherine C. Richardson (NC Bar No. 56578)
MCGUIREWOODS LLP
201 North Tryon St., Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 343-2000
jlawson@mcguirewoods.com

*Counsel for Defendants*

25

## CERTIFICATION AS TO WORD LIMITATION

Pursuant to Local Rules 7.3(d), the undersigned hereby certifies this brief contains fewer than 6,250 words (as determined by the word count of Microsoft Word).


This the 6th day of October, 2023.

<div style="margin-left: 50%;">

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com

</div>

26

## CERTIFICATE OF SERVICE

I hereby certify that on October 6th, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Pressley Millen, Samuel Hartzell, and Raymond Bennett.

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com