**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CIVIL ACTION No. 1:23-cv-00734-WO-JEP**

| | |
|---|---|
| ANITA S. EARLS, | |
| Plaintiff, | **BRIEF IN OPPOSITION TO** |
| v. | **PLAINTIFF'S MOTION FOR** |
| NORTH CAROLINA JUDICIAL STANDARDS COMMISSION, *et al.*, | **PRELIMINARY INJUNCTION** |
| Defendants. | |

Defendants, through counsel, respectfully ask this Court to deny the motion for a preliminary injunction that would prevent Defendants from continuing their statutorily prescribed work of investigating potential violations of the North Carolina Code of Judicial Conduct (the "Code").

## INTRODUCTION

Plaintiff's request for this Court to enjoin the Commission's ongoing proceedings should be denied. The North Carolina Judicial Standards Commission (the "Commission") is tasked only with investigating whether a violation of the Judicial Code might have occurred and, if there is a violation, recommending to the Supreme Court of North Carolina whether the court should issue any public reprimand or discipline. The Commission is in the process of carrying out that legislative responsibility now through a confidential proceeding[1] designed to protect, not threaten, a judge's First Amendment rights. As

---

[1] Plaintiff elected to waive the confidentiality of a proceeding that would otherwise be confidential. D.E. 1 ("Compl.").

explained more fully in the Commission's motion to dismiss, because Plaintiff is free to raise her constitutional concerns in that proceeding, *Younger* abstention bars federal courts from interfering with the Commission's ongoing work. But even if the Court were to take up the merits of Plaintiff's claims, there is no basis to enjoin the Commission's investigation. A confidential investigation is not the sort of material adverse action to Plaintiff's speech to implicate the First Amendment and, even if it were, the investigation is narrowly tailored to serve the state's compelling interest in protecting public confidence in the integrity of the judiciary. Enjoining the investigation is not necessary to prevent irreparable harm to Plaintiff, but would gravely harm the public interest by preventing the Commission from effectively carrying out its important statutory mission.

## STATEMENT OF FACTS

A comprehensive statement of facts can be found in the brief in support of the Commission's contemporaneously filed Motion to Dismiss, which, if granted, would obviate the need to resolve Plaintiff's Motion for a Preliminary Injunction. The following abbreviated statement of facts is derived from Plaintiff's factual allegations and is focused on those facts most relevant to Plaintiff's motion.

## I.    THE COMMISSION

The Commission is a nonpartisan "arm" of the Supreme Court of North Carolina, *In re Nowell*, 293 N.C. 235, 244 (1977), created by the General Assembly "to provide for the investigation and resolution of inquiries concerning the qualification or conduct of any judge or justice" of North Carolina courts, N.C. Gen. Stat. § 7A-374.1. This case concerns the Commission's investigative proceedings.

2

The Commission's investigative proceedings are initiated either by a confidential complaint or on the Commission's own motion. N.C. Gen. Stat. § 7A-377(a). A complaint is reviewed by a seven-member panel of the Commission to determine whether the alleged conduct would violate the Code. Comm'n Rule 9(b). Although a complaint may be summarily dismissed, the investigative panel may authorize a formal investigation if five members of the panel conclude further inquiry is warranted, prompting notice to the judge and an opportunity for the judge to respond. Comm'n Rule 10(c). As a general matter, unless a proceeding reaches a formal investigation, the complaint is resolved without the judge ever learning of the complaint or offering any response. Comm'n Rule 9(c); *see* Decl. of Brittany Pinkham ¶ 18 ("Decl.").

After a formal investigation, the investigative panel determines whether there is probable cause of a Code violation that would rise to the level of public reprimand or discipline. Comm'n Rule 12(a); *see* N.C. Gen. Stat. § 7A-376(a). If the panel finds probable cause of such a violation, it issues charges to be heard by a seven-member disciplinary panel comprising the other half of the Commission. Comm'n Rules 12(a), 19; *see* N.C. Gen. Stat. § 7A-377(a5). At the conclusion of that process, the disciplinary panel votes on whether to recommend further action to the Supreme Court. Comm'n Rule 21(a); *see* N.C. Gen. Stat. § 7A-377(a5). Five votes of the disciplinary panel are required to recommend any action by the Supreme Court. *Id.*

Importantly, the Commission cannot itself issue any public reprimand or discipline against a judge. N.C. Gen. Stat. § 7A-376. If a recommendation for public reprimand or discipline is made, the Supreme Court independently determines the appropriate course,

3

after providing the judge an opportunity to submit briefs and make oral arguments before that Court. N.C. Gen. Stat. § 7A-377(a5); *see In re Inquiry Concerning a Judge, No. 17-143*, 372 N.C. 123, 135 (2019).

Proceedings before the Commissions are strictly confidential unless confidentiality is waived by the judge. Barring such a waiver, "all papers filed with and proceedings before the Commission" must be kept confidential. N.C. Gen. Stat. 7A-377(a1). Further, no person is permitted to disclose information obtained through those proceedings. *Id.* "The issuance of a letter of caution is confidential." *Id.* § 7A-377(a3). "Disciplinary hearings ordered by the Commission" are likewise confidential. *Id.* § 7A-377(a5). And unless and until the Supreme Court ultimately issues public reprimand or discipline, the statement of charges for a disciplinary hearing, the pleadings, and any "recommendations of the Commission to the Supreme Court, along with the record filed in support of such recommendations are confidential." *Id.* § 7A-377(a5)–(a6).

## II.    FACTUAL BACKGROUND

The Commission began an informal investigation involving Plaintiff in March 2023, based on concerns that Plaintiff may have publicly discussed confidential deliberations during a Supreme Court conference. *See* Compl., Ex. C; Decl. ¶ 22. The Commission dismissed that complaint in May with a reminder to Plaintiff to be mindful of Canon 2A's requirement that a judge act in a manner that promotes the public's confidence in the judiciary's integrity and impartiality. *See* Compl. ¶¶ 73–76; Decl. ¶ 23.

Shortly thereafter, in June 2023, Plaintiff gave an interview to Law360 discussing her concerns about the lack of diversity among Supreme Court law clerks and advocates.

4

*See* Compl., Ex. B. Although many of Plaintiff's statements present no ethical concerns, some of the remarks might be read to accuse Supreme Court colleagues of acting on the basis of certain racial, gender, or partisan biases. For example, Plaintiff was reported to remark, regarding interruptions by colleagues during oral argument, that "sometimes it's hard to separate out: Is this race or is this gender or is this because of my political views? Any one of those three or the combination of all three might be the explanation." *Id.*, Ex. B. Plaintiff is also quoted as saying that "[t]he new members of our court very much see themselves as a conservative bloc" and stating that their "allegiance is to their ideology, not to the institution." *Id.*, Ex. B at 3.

In August 2023, the Commission notified Plaintiff that it was conducting a formal investigation into statements in the interview that "appear[ed] to allege that [Plaintiff's] Supreme Court colleagues are acting out of racial, gender, and/or political bias in some of their decision-making." Compl., Ex. A at 2. The Commission informed Plaintiff that the comments "potentially violate[d]" Canons 2A and 3 of the Code of Judicial Conduct, *id.*, which require a judge to "conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary," Canon 2A, and to "be unswayed by partisan interests, public clamor, or fear of criticism," Canon 3A(1).

Rather than respond to the Commission, Plaintiff filed this action and currently requests a preliminary injunction. The Complaint alleges that the Commission's "continuing efforts to investigate and potentially discipline [Plaintiff] are a blatant attempt to chill her First Amendment rights." Compl. ¶ 78. On that basis, it requests a declaratory judgment and injunctive relief under 42 U.S.C. § 1983. *Id.* ¶¶ 82–90. Plaintiff now moves

the Court to preliminarily enjoin the Commission "from further efforts to investigate, punish, and otherwise retaliate against [Plaintiff] for exercising her core First Amendment right to speak." D.E. 4, at 22 ("Pltf. PI Br.").

**ARGUMENT**

Plaintiff's request for a preliminary injunction should be denied. A preliminary injunction is an "extraordinary remedy." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff requesting one must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Id.* at 20. Each of the four requirements must be met to justify relief. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 595 (4th Cir. 2013). And an injunction "has never been regarded as strictly a matter of right," even if "irreparable injury may otherwise result to the plaintiff." *Yakus v. United States*, 321 U.S. 414, 440 (1944).

## I. PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS

Plaintiff is not likely to succeed on the merits of this case. At the threshold, *Younger* abstention requires this Court to dismiss this case without reaching the merits while the Commission's proceedings are ongoing. Even if *Younger* did not require dismissal, Plaintiff is not likely to demonstrate that the Commission's mere investigation into judicial conduct violates anyone's First Amendment rights to speak on any matter of public concern. And even if Plaintiff could make that showing, Plaintiff's claim would fail because she cannot meet the additional elements of a Section 1983 claim in this context.

6

## A. This Case Should Be Dismissed Under *Younger*

As explained more fully in the motion to dismiss, *Younger* abstention requires the Court to dismiss this case. Under *Younger*, federal courts are required to abstain from exercising jurisdiction over certain important state proceedings, where "there is 'an ongoing state judicial proceeding'" that "'implicates important state interests'" and "provides 'an adequate opportunity … to raise constitutional challenges.'" *Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022) (citation and brackets omitted; ellipsis in original); *see Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982). The Commission's investigation is the type of "civil enforcement proceeding" to which *Younger* applies because it is a proceeding involving the State that is designed to determine whether an individual has engaged in "some wrongful act." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013); *see* Br. in Support of Mot. to Dismiss 13–15 ("MTD Br."). The investigation implicates the State's vital interest in protecting and promoting judicial integrity. *See* MTD Br. 16–17; *see also Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 446 (2015). The Commission's proceeding gives Plaintiff ample opportunity to raise her constitutional concerns before the Commission, the Supreme Court of North Carolina, and ultimately the Supreme Court of the United States. *See* MTD Br. 17–20. And Plaintiff cannot establish any exception to *Younger* abstention that would warrant federal court intervention in the state's important proceedings at this stage. *See* MTD Br. 20–24. *Younger* abstention alone warrants denial of preliminary injunctive relief.

7

### B. Plaintiff Cannot Establish a First Amendment Violation

If the Court were to consider the merits, Plaintiff is also unlikely to succeed. Plaintiff alleges that the Commission is engaged in an "on-going campaign" in retaliation for Plaintiff's speech on matters of public concern. Pltf. PI Br. 2. To state a claim of First Amendment retaliation, a plaintiff must establish that "(1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *see Hous. Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1260 (2022) ("[A] plaintiff pursuing a First Amendment retaliation claim must show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive.'" (citation omitted)). Plaintiff's claim fails because a confidential investigation into whether any disciplinary action is warranted does not itself "adversely affect[]" Plaintiff's First Amendment rights to engage in protected speech. Even if it did, the Commission's investigation is narrowly tailored to serve the State's compelling interest in protecting the integrity of the judiciary.

#### 1. A confidential investigation is not an adverse action sufficient to implicate the First Amendment

Plaintiff cannot show a First Amendment violation without demonstrating that the Commission's actions—here, initiating a confidential investigation—adversely affected her speech rights. "[A] plaintiff suffers adverse action" sufficient to implicate the First Amendment only "if the defendant's allegedly retaliatory conduct would likely deter 'a

8

person of ordinary firmness' from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500. This "objective standard," *id.*, "focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts," *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (emphasis omitted). As an elected official on the State's highest court, Plaintiff faces a heavy burden to make the necessary showing here. Courts expect elected representatives "[i]n this country" to bear a certain amount of scrutiny—up to and including public censure from their peers—"and to continue exercising their free speech rights when [it] comes." *Hous. Cmty. Coll. Sys.*, 142 S. Ct. at 1261. When Plaintiff chose to run for judicial office, she chose to subject her conduct to scrutiny under the Code. Plaintiff cannot show that the Commission's confidential investigation is sufficient to chill the speech of a person of ordinary firmness in that context.

A mere confidential investigation of speech—even protected speech—is not an adverse action sufficient to abridge the speaker's First Amendment rights. In *Laird v. Tatum*, 408 U.S. 1 (1972), the Supreme Court explained that a plaintiff cannot state a First Amendment violation by "alleg[ing] that the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid governmental purpose." *Id.* at 10–11. In a related context, the Court has held that a state administrative body "violates no constitutional rights by merely investigating the circumstances of" conduct putatively protected by the First Amendment's Free Exercise Clause. *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*,

9

*Inc.*, 477 U.S. 619, 628 (1986). As Justice Stevens emphasized in concurrence, "neither the investigation of certain charges nor the conduct of a hearing on those charges is prohibited by the First Amendment." *Id.* (Stevens, J., concurring). In *Pierce v. Texas Department of Criminal Justice*, the Fifth Circuit thus correctly held that, although multiple investigations of an inmate for various infractions may have subjectively "chill[ed] [the inmate's] protected speech," the investigations were "not actionable" under the First Amendment. 37 F.3d 1146, 1150 (5th Cir. 1994). And in *Benningfield v. City of Houston*, the Fifth Circuit explained that even if "a reprimand can constitute an adverse employment action, an investigation does not*." 157 F.3d 369, 376 (5th Cir. 1998).

Plaintiff provides no basis for departing from that rule. Plaintiff contends that her speech has been chilled because the investigation may at some point lead to a disciplinary action or sanction, but no actionable "chilling effect arise[s] merely from the individual's knowledge that a governmental agency was engaged in certain activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." *Laird*, 408 U.S. at 11. And Plaintiff's stated concern about the potential of future discipline for statements in the Article is particularly unpersuasive for several reasons.

First, the Commission lacks the power to discipline a judge. The Commission "is authorized to investigate complaints, hear evidence, find facts, and make a recommendation thereon." *In re Nowell*, 293 N.C. at 244. It "can neither censure nor remove a judge." *Id.*; *see* N.C. Gen. Stat. § 7A-376(a)–(b). The most the Commission can do is issue a *confidential* letter of caution or make a *confidential* recommendation to the

10

North Carolina Supreme Court for public "reprimand, censure, suspension, or removal." N.C. Gen. Stat. § 7A-376(a)–(b). The Supreme Court, moreover, is under no obligation to implement any Commission recommendation. *See In re Badgett*, 362 N.C. 202, 207 (2008) ("[T]his Court exercises its independent judgment with respect to the disciplinary measures to be imposed on a judge."); *In re Inquiry Concerning a Judge, No. 240*, 356 N.C. 389, 398 (2002).

Second, the likelihood of even a recommendation for discipline is speculative. The vast majority of the Commission's inquiries end without even a private letter of caution. *See* North Carolina Judicial Standards Commission, *Annual Report 2022*, at 8, available at https://bit.ly/3ENSsKu; Decl. ¶¶ 17–20. Last year, out of 560 investigations, the Commission did not recommend that the Supreme Court publicly discipline a single judge. *Id.* And of course, as Plaintiff notes, the Commission's prior investigation of allegations that she had revealed confidential Supreme Court information was itself dismissed without any recommendation for public sanction. Compl. ¶ 73.

Finally, it is far from clear that even disciplinary action from the state Supreme Court would implicate the First Amendment. In *Houston Community College System*, the U.S. Supreme Court held that a "disciplinary censure" of an elected official issued by his colleagues in their official capacity did not "qualify as a materially adverse action" sufficient to state a First Amendment claim. 142 S. Ct. at 1261–62. Similar reasoning would apply to a private letter of caution or public censure here. And although the Supreme Court (not the Commission) could, in theory, suspend or remove a judge for a violation of the Code, the Court metes out that discipline only in the most egregious cases. *See, e.g.*, *In*

11

*re Belk*, 364 N.C. 114, 119–20 (2010) (lying about a potential conflict and physically threatening the Chief Judge when she raised the matter with him); *In re Hunt*, 308 N.C. 328 (1983) (accepting cash bribes to protect criminal activities); *In re Martin*, 302 N.C. 299 (1981) (making sexual advances toward female defendants in his courtroom).

In short, the Commission has opened a confidential investigation pursuant to its legislative mandate into certain remarks by Plaintiff, an elected official of the highest order who should expect scrutiny under the Code. The Commission has not publicly reprimanded or disciplined Plaintiff, nor could it, under North Carolina law. And even if the Commission eventually recommended a sanction of Plaintiff to the state Supreme Court and the Court followed that recommendation, that discipline would likely be insufficient to state a First Amendment claim. The Commission's investigation into Plaintiff's remarks is not sufficiently adverse to sustain a First Amendment retaliation claim.

### 2. Even if an investigation could restrict Plaintiff's speech, the Commission's investigation would survive strict scrutiny

If the Commission's investigation could constitute a material adverse action restricting Plaintiff's speech, Plaintiff's First Amendment claim would still fail. Plaintiff argues that because comments in the Article were "on a matter of public concern," First Amendment protection for Plaintiff's speech is "'at its zenith,'" and the Commission's actions therefore must be subjected to strict scrutiny. Pltf. PI Br. 12 (quoting *Buckley v. Am. Const. Law Found., Inc.*, 525 U.S. 182, 186–87 (1999)); *see Republican Party of Minnesota v. White,* 536 U.S. 765 (2002). But even under that heightened standard, this

12

case would be one "in which a speech restriction withstands strict scrutiny." *Williams-Yulee*, 575 U.S. at 444.

To survive strict scrutiny, the Commission would need to show that its investigation is "(1) narrowly tailored, to serve (2) a compelling state interest." *Republican Party of Minnesota*, 536 U.S. at 775. It is. Although Plaintiff argues that a reprimand on the basis of her public comments would not be narrowly tailored to serve a compelling interest, the Commission has neither issued nor recommended any such reprimand. It has merely initiated a confidential investigation designed to determine whether a violation of the Code has occurred and, if so, whether a recommendation of reprimand or discipline is warranted. That modest step satisfies constitutional scrutiny.

First, the Commission's investigation indisputably serves a compelling state interest. The Supreme Court squarely held in *Williams-Yulee* that a State's interest in "'protecting the integrity of the judiciary' and 'maintaining the public's confidence in an impartial judiciary'" is compelling. *Williams-Yulee*, 575 U.S. at 445. The Canons at issue are aimed directly at those ends. Canon 2A requires that a judge "should respect and comply with the law and should conduct himself/herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon 2A. Canon 3 similarly requires a judge "to be unswayed by partisan interests, public clamor, or fear of criticism." Canon 3A(1).

Second, the Commission's investigation is narrowly tailored to serve that compelling interest. Plaintiff does not dispute that otherwise protected First Amendment speech can harm those interests and undermine the public's confidence in the integrity of

13

the judiciary. *See* Pltf. PI Br. 12, 15 n.3. But if that is so, it is difficult to imagine any less speech-restrictive means to protect against such harm than to task a nonpartisan Commission—comprising judges, lawyers, and laypersons—to initiate, upon complaint, a confidential investigation to "determin[e] [whether] any judge has engaged in conduct that violates" those Canons. N.C. Gen. Stat. § 7A-374.1(a). Such an investigation, where the judge is afforded a statutory right to participate, retain counsel, and to offer testimony and documentary evidence, is highly protective of protected speech.

Plaintiff suggests that "by bringing to light … alleged unfairness in the judicial system," her speech "further[s] the very goals that the Commission wishes to promote." Pltf. PI Br. 14 (citation and emphasis omitted); *see id.* at 15. And Plaintiff argues that the State's interests would be "ill served by casting a cloak of secrecy around the operations of the courts." Pltf. PI Br. 14 (citation omitted); *see id.* at 15. The Commission does not diminish the value of public discourse and debate about the judiciary. It has not silenced anyone. It has determined only that although a judge is free to publicly criticize another judge's decision-making process in many circumstances, an *unsubstantiated* public allegation that a judge is "acting out of racial, gender, and/or political bias," or any other improper basis, in that process "runs contrary to a judge's duty to promote public confidence in the impartiality of the judiciary." Compl., Ex. A at 1–2. And the Commission has initiated an investigation to determine whether that conduct occurred here. That reasonable course is precisely tailored to the interests that the Commission and Plaintiff appear to share.

14

None of Plaintiff's authorities are to the contrary. Plaintiff relies on *Republican Party of Minnesota v. White* for the broad proposition that judges do not forfeit their First Amendment rights upon entering office. Pltf. PI Br. 12. That is true. But the Supreme Court struck down the canon there—prohibiting judges from "announc[ing] his or her views on disputed legal or political issues"—because the interest served, judicial impartiality as to *legal issues*, was not compelling and, in any event, the canon was not narrowly tailored, or tailored at all, to serve that interest. *See id.* at 776–78. By contrast, the Supreme Court has already held that the interest involved in this case, judicial integrity and impartiality as to the parties who come before them, *is* a compelling interest. *See Williams-Yulee*, 575 U.S. at 445. And the Commission's confidential investigation is narrowly tailored to promote those interests. *See* pp. 13–14, *supra.*

Plaintiff also cites *Scott v. Flowers*, Pltf. PI Br. 13, but that case concerned the constitutionality of a public reprimand of a judge, 910 F.2d 201, 208 (5th Cir. 1990). No such action has been taken against Plaintiff, and indeed the Commission could *not* take such an action unilaterally. Likewise, *Jenevein v. Willing* concerned a public censure of the judge in question, and the Fifth Circuit *upheld* the censure, in part. 493 F.3d 551, 552, 560 (5th Cir. 2007). Whatever the Commission or a court might later conclude about any public reprimand or discipline, those cases are inapposite to whether the Commission's *confidential investigation* is narrowly tailored to serve the State's compelling interest in maintaining judicial integrity and confidence in the judiciary.

15

### 3.    Plaintiff's vagueness arguments are premature and unpersuasive

Plaintiff's argument that "the Commission's reliance on Canon 2(A) is unconstitutionally vague" does not help the First Amendment claim. Any as-applied vagueness challenge to Canon 2A is premature for the simple reason that, contrary to Plaintiff's suggestion, the Commission has not applied any canons to Plaintiff's speech. The Commission is conducting a confidential investigation to determine *whether* Canon 2A applies to Plaintiff's conduct and, if so, the appropriate response. And whether the Commission's proceeding concludes that a violation has occurred and warrants any sanction is speculative. *See* p. 11, *supra*. In any event, Plaintiff would be unlikely to succeed on any claim that Canon 2A is unconstitutionally vague as applied here for multiple reasons.

First, "[t]he meaning and construction of the Code are matters of state law to be decided ultimately by the state Supreme Court." *Stretton v. Disciplinary Bd. of S. Ct. of Pennsylvania*, 944 F.2d 137, 140 (3d Cir. 1991). If the application of Canon 2A were unclear, "*Pullman* abstention requires federal courts to abstain from deciding an unclear area of state law that raises constitutional issues because state court clarification might serve to avoid a federal constitutional ruling." *Nivens v. Gilchrist*, 444 F.3d 237, 245 (4th Cir. 2006).[2]

---

[2] This case is unlike *Moore v. Circosta*, 494 F. Supp. 3d 289 (M.D.N.C. 2020) (Osteen, J.), which concerned the authority of the North Carolina State Board of Elections to issue new absentee ballot voting requirements during the COVID-19 pandemic eliminating North Carolina's state witness requirement. The Court declined to abstain because it had already ruled on "the primary state law at issue" and, in any case, found the issue "fairly clear." *Id.* at 308.

16

Second, Canon 2A is not unconstitutionally vague. "[A] law is not void for vagueness so long as it '(1) establishes minimal guidelines to govern law enforcement, and (2) gives reasonable notice of the proscribed conduct,'" *Recht v. Morrisey*, 32 F.4th 398, 415 (4th Cir. 2022) (citation omitted). And while "a more stringent vagueness test" may apply to restrictions of speech, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 19 (2010). Plaintiff has more than "reasonable notice" on this topic. The very Court on which Plaintiff serves reprimanded a fellow judge under Canon 2A for, among other things, openly criticizing another judge and accusing the judge of making decisions based on racial bias. *See In re Inquiry Concerning a Judge, No. 17-143*, 372 N.C. at 130–31 (Earls, J.). The Court issued the public reprimand without expressing any First Amendment concerns, concluding that the disciplined judge "failed to conduct herself in a manner that promotes public confidence in the integrity of the judiciary, in violation of Canon 2A of the North Carolina Code of Judicial Conduct." *Id.* at 123, 135. That decision provides at least "minimal guidelines" on how Canon 2A will or will not be applied to a judges' criticism of their colleagues on similar grounds.

Moreover, to the extent judges are uncertain about how Canon 2A, or any other Canon, might apply to particular public comments or in particular contexts, the Commission can, and routinely does, issue advisory opinions, both formal and informal, to inquiring judges. *See* MTD Br. 4–5, 9–10. To be clear, neither those opinions nor a judge's decision not to seek such advice prohibits a judge from making any public comment. But an advisory opinion does provide the inquiring judge a safe harbor against investigation or

any sanction for conduct in compliance with the formal or informal advice. *See* Comm'n Rule 8. And the ability to seek such advice, and to do so on an expedited basis, undermines any vagueness concerns. *See Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio S. Ct.*, 894 F.3d 235, 247 (6th Cir. 2018) (declining to find a judicial rule void for vagueness because "the Code's comments, advisory opinions, and staff letters help clarify ambiguities and mitigate vagueness concerns").[3]

## C.    Plaintiff Cannot Satisfy Additional Elements Of Section 1983

Finally, Plaintiff is not likely to succeed on the merits because she also cannot satisfy the additional necessary elements of a Section 1983 claim in this context.

The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates 'a species of tort liability.'" *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305 (1986) (citation omitted). "To determine the elements of a constitutional claim under § 1983, [the Supreme Court's] practice is to first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with 'the values and purposes of the constitutional right at issue.'" *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022) (citation omitted); *see Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019). The common law serves "as

---

[3] Providing such informal, timely advice to judges about the Code is a core component of the Commission's mission and central to its day-to-day operations. Decl. ¶ 6. And the Commission often offers advisory opinions to judges who are currently under investigation by the Commission. Decl. ¶ 8. The Commission recognizes that the Court did not find compelling the Commission's previous offer to provide advisory opinions to Plaintiff, *see* D.E. 15, at 6 ("Extension Order"), but the Commission was—and remains—ready to provide impartial advice with respect to any request by Plaintiff should she decide to seek it. Moreover, the possibility of any judge seeking such advice is a sound reason, grounded in precedent, for why Canon 2A is not unconstitutionally vague.

18

a source of inspired examples" in defining the elements of a Section 1983 claim for analogous constitutional violations. *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (citations omitted).

In this case, Plaintiff's claim that "[t]he Commission is attempting to silence [her] … by using repeated, targeted, and unjustified investigations," Pltf. PI Br. 9 n.2, is directly analogous to the common-law tort of malicious prosecution. At common law, malicious prosecution allowed recovery against an individual who had initiated proceedings despite "having 'no good reason to believe'" that the proceedings were "'justified by the facts and the law.'" *Thompson*, 142 S. Ct. at 1338 (quoting Cooley, Law of Torts 180 (1880) (Cooley)). Although a malicious-prosecution claim frequently concerned a criminal prosecution, the tort extended to baseless civil suits as well. *See* 1 F. Hilliard, The Law of Torts or Private Wrongs 416 (1866); Bigelow, Elements of the Law of Torts 70–71 (1878).

Looking to malicious prosecution as an "inspired example" to Plaintiff's Section 1983 claim, Plaintiff cannot meet the necessary elements. The common-law tort had three elements: "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' … and (iii) the prosecution 'terminated in the acquittal or discharge of the accused.'" *Thompson*, 142 S. Ct. at 1338 (quoting Cooley 181). Most clearly, Plaintiff cannot show that the Commission's proceeding has been terminated in her favor. The Commission's investigation has not reached any kind of

19

disposition. Plaintiff cannot maintain a Section 1983 claim in this context without first obtaining a favorable disposition of the pending proceeding.[4]

## II.   PLAINTIFF HAS NOT ESTABLISHED IRREPARABLE HARM

Plaintiff also cannot show a likelihood of irreparable harm. To satisfy this factor, there must be "a clear showing of irreparable harm" that is "neither remote nor speculative, but actual and imminent." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002). An injunction is not warranted when the plaintiff "'faces no *immediate threat* of irreparable harm.'" *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983) (emphasis in original)).

Plaintiff contends that, if the investigation proceeds, she will be irreparably harmed because the Commission's proceeding "chill[s] her First Amendment rights." Pltf. PI Br. 4. To be sure, the unconstitutional abridgement of protected speech is irreparable harm. *See,*

---

[4]   Plaintiff does not cite Section 1983 in the first cause of action for a declaratory judgment. *See* Compl. ¶¶ 82–88. But a declaratory judgment is a remedy, akin to an injunction, not a cause of action. *See CGM, LLC v. BellSouth Telecommunications, Inc.*, 664 F.3d 46, 55 (4th Cir. 2011) (The Declaratory Judgment Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights."); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Plaintiff's request for a declaratory judgment thus must proceed under Section 1983, as well.

Moreover, even if Plaintiff could bring a standalone declaratory judgment claim, it would be inappropriate for this Court to exercise its discretionary authority to entertain that request for the same reasons it would be inappropriate to proceed on Section 1983 while the Commission's proceedings are ongoing. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act"); *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) (holding that a district court should not issue a declaratory judgment when it would have the same effect as enjoining a state court proceeding).

*e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976). But as explained, Plaintiff's First Amendment rights could be infringed at this stage only if the Commission's proceeding constituted an adverse action, and a confidential investigation to determine whether to recommend that another body consider a sanction is not an adverse action. *See* pp. 8–12, *supra*. Whether any public sanction is forthcoming is "remote" and "speculative," not "actual" or "imminent." *Scotts Co.*, 315 F.3d at 283.

In addition, Plaintiff's allegations of a subjective chilling effect are insufficiently specific to justify an injunction. Although Plaintiff cites a handful of speaking engagement and writing invitations she has forgone, with respect to future speech, Plaintiff describes only in the most general terms purported "public or quasi-public professional speaking engagements" at which her speech might be chilled because of the ongoing proceeding. Extension Order 4 (citation omitted); *see* D.E. 3-1, at 7 ("I intend to continue to engage in the core political speech of the type described in this Declaration."). Such vague allegations do not make a "clear showing" of immediate and irreparable harm that might be avoided by an injunction. *Scotts Co.*, 315 F.3d at 283.

Even if the Court were to find that Plaintiff faces irreparable harm, such harm standing alone is insufficient to justify the extraordinary act of enjoining an ongoing state proceeding. The Supreme Court has made clear that when a plaintiff asks a federal court to intervene in a pending state proceeding of this nature, the plaintiff's injury must be not only irreparable, but also "both great and immediate." *Younger*, 401 U.S. at 46 (internal quotation marks omitted). Even a "'chilling effect'" that "'inhibit[s] the full exercise of

21

First Amendment freedoms'" does "not by itself justify federal intervention." *Id.* at 50

(quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486, 487 (1965)).

## III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST INJUNCTIVE RELIEF

Finally, Plaintiff has not shown that the balance of equities or the public interest

"tip[] decidedly in favor" of enjoining the Commission's proceeding. *Rum Creek Coal*

*Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991) (internal quotation marks

omitted). "[T]he balance of the equities and the public interest … 'merge when the

Government is the opposing party.'" *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022)

(quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Thus, "[w]hen a private party seeks

injunctive relief against the government, the final two injunction factors … generally call

for weighing the benefits to the private party from obtaining an injunction against the harms

to the government and the public from being enjoined." *Doe v. Mattis*, 889 F.3d 745, 766

(D.C. Cir. 2018).

Here, because Plaintiff has failed to establish any cognizable injury in the absence

of an injunction, the benefits of an injunction to Plaintiff are negligible. Any benefit to

Plaintiff of an injunction is further diminished by the fact that Plaintiff has the opportunity

to raise her First Amendment objections within the very proceeding that would be enjoined.

*See* Canon 7(B)(6) (permitting judicial candidates, like Plaintiff, to engage in

"constitutionally protected political activity"); *see also* MTD Br. 3–4.

Conversely, the harm that North Carolina and its citizens would suffer if an

injunction issued is grave. The Fourth Circuit has held that the public interest is "served by

22

adherence" to the State statute or rule that has not been declared invalid. *Telvest, Inc. v. Bradshaw*, 618 F.2d 1029, 1036 (4th Cir. 1980) (vacating preliminary injunction in constitutional challenge to Virginia statute). If a mere claim of First Amendment protection is sufficient to bring a Commission investigation to a halt, the Commission's attempts to investigate potential violations of Canons 2A, 3, and 7 would be profoundly frustrated, if not entirely thwarted. That harm would be particularly acute here, given the State's "vital" interest in the public's confidence in the integrity of the State's judicial system, which the Commission's proceedings are designed to serve. *Williams-Yulee*, 575 U.S. at 445. Finally, because this lawsuit seeks to enjoin such an important ongoing state proceeding, the Court must account for our national policy of "'Our Federalism'" that compels "federal courts [to] respect the sovereignty of their state counterparts." *Air Evac EMS*, 37 F.4th at 93 (quoting *Younger*, 401 U.S. at 44).

In sum, the public has an interest in permitting the Commission to pursue its legislatively mandated investigation into a violation of the Code and specifically in allowing state proceedings to continue unabated by a federal court. While each of these interests standing alone would outweigh Plaintiff's nominal interest in an injunction, their collective weight tips the balance of factors decidedly in favor of the Commission.

## **CONCLUSION**

For the foregoing reasons, the Commissions asks that the Court deny Plaintiff's Motion for a Preliminary Injunction.

23

This the 6th day of October, 2023.

                                    Respectfully submitted,


/s/ Craig D. Schauer                /s/ Jonathan Y. Ellis
Craig D. Schauer (NC Bar No. 41571)     Jonathan Y. Ellis (NC Bar No. 41220)
W. Michael Dowling (NC Bar No. 42790)   MCGUIREWOODS LLP
DOWLING PLLC                        501 Fayetteville St., Suite 500
3801 Lake Boone Tr., Suite 260      Raleigh, NC 27601
Raleigh, North Carolina 27607       Telephone: (919) 755-6600
Telephone: (919) 529-3351           jellis@mcguirewoods.com
cschauer@dowlingfirm.com
                                    Jodie Herrmann Lawson (NC Bar No.
                                    42900)
                                    Katherine C. Richardson (NC Bar No.
                                    56578)
                                    MCGUIREWOODS LLP
                                    201 North Tryon St., Suite 3000
                                    Charlotte, North Carolina 28202
                                    Telephone: (704) 343-2000
                                    jlawson@mcguirewoods.com


                    *Counsel for Defendants*

24

## CERTIFICATION AS TO WORD LIMITATION

Pursuant to Local Rules 7.3(d), the undersigned hereby certifies this brief contains fewer than 6,250 words (as determined by the word count of Microsoft Word).

This the 6th day of October, 2023.

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com

25

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2023, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing

to the following: Pressley Millen, Samuel Hartzell, and Raymond Bennett.

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com