# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:23-CV-734-WO-JEP

| | |
|---|---|
| ANITA S. EARLS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NORTH CAROLINA JUDICIAL | ) |
| STANDARDS COMMISSION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

_____

## **DECLARATION OF WANDA G. BRYANT**

WANDA G. BRYANT, declares as follows:

1. I am a citizen and resident of Durham, North Carolina. I am and have been a member of the North Carolina State Bar since 1982. I am a retired judge of the North Carolina Court of Appeals on which I served for nearly 18 years. I am competent to make this Declaration. It is based on my personal knowledge.

2. For the period 2014 through 2020, I served as the Chair of the North Carolina Judicial Standards Commission (the "Commission"). In that role, I worked closely with Commission staff and became familiar with the Rules of the Judicial Standards Commission (the "Rules"), and, indeed, was sometimes called upon to interpret those Rules.

3. During my tenure as Chair of the Commission, the Commission undertook a substantial revision to the Rules – procedural, structural, and stylistic – which included various changes to clarify procedures and to make certain substantive changes. Those

changes were provided to the North Carolina Supreme Court for its consideration on January 13, 2020, and ultimately enacted by the Supreme Court by order, dated June 3, 2020 (and made effective that day). No further significant changes have been made to the Rules since that date.

4. As provided in N.C. Gen. Stat. § 7A-377(a), "[a]ny citizen of the State may file a written complaint with the Commission concerning the qualifications or conduct of any justice or judge of the General Court of Justice, and thereupon the Commission shall make such investigation as it deems necessary." As indicated by its title, Rule 9 describes the "Procedure on Receipt of Complaint or Information." Thus, the Commission's investigative activities are triggered upon receipt of a written complaint against a judge or justice concerning either conduct in violation of the North Carolina Code of Judicial Conduct (the "Code") or a disability that seriously interferes with the judge's judicial duties.

5. As an initial step, under Rule 9(a), the Commission's Executive Director and Commission Counsel first review the complaint "to determine whether the complaint discloses facts that, if true, indicate that a judge has engaged in conduct in violation of the Code or suffers from a disability that seriously interferes with the judge's judicial duties." If that initial review indicates that such facts are not disclosed or "if the allegations in the written complaint are obviously unfounded or frivolous," the Chair shall summarily dismiss the complaint. That dismissal occurs "at the next investigative panel meeting" (more fully described below), and is subject to the right of an individual panel member

"to review the complaint and request consideration of it" by a full investigative panel pursuant to Rule 9(b).

6. The Commission may also "consider any complaint brought on the Commission's own motion that is based on credible information received by the Commission disclosing" a potential violation or disability. Rule 9(b).

7. Under the Rules, the Commission members are split by the Chair into two panels, "designated Panel A and Panel B." Rule 2(b). With regard to any complaint which goes beyond the Rule 9(a) summary-dismissal phase described above, one of those panels will "serve as an investigative panel," while the other panel, if necessary, will "serve as a hearing panel." Rule 2(b)(4). Thus, "[n]o panel may function as both an investigative and hearing panel in the same matter." *Id*.

8. Under Rule 9(b), that investigative panel, by an "affirmative vote of at least 5 [of its 7] members," may either "dismiss the complaint or authorize an investigation pursuant to Rule 10."

9. The Rule 10 investigation authorized by the panel may be "either a preliminary or formal investigation." Rule 10(a). A preliminary investigation, which is typically not disclosed to the subject judge, is "made for the purpose of verifying the credibility of or ascertaining additional facts necessary to evaluate allegations in a complaint received by the Commission regarding potential judicial misconduct or disability." Rule 10(b).

10. Under that same Rule, a "formal investigation is made for the purpose of determining whether a judge has engaged in" actual misconduct or suffers from a serious

disability. Rule 10(c). In the case of formal investigations, the subject judge receives written notification and is afforded an opportunity to respond and provide relevant information. Rule 10(c)(1)-(3).

11. Under Rule 12(a), after completion of a formal investigation, the investigative panel, "upon the affirmative vote of at least 5 members," may then "authorize the initiation of a disciplinary or disability proceeding against the judge." That authorization "constitutes a finding that probable cause exists to believe that the Respondent engaged in conduct that warrants public reprimand, censure, suspension, or removal by the Supreme Court" or a disability finding that warrants suspension or removal by the Supreme Court. *Id*. If the affirmative vote of 5 members is not obtained, the complaint is dismissed.

12. Only after authorization to proceed, does the disciplinary proceeding move forward in front of the separate hearing panel with the filing of a Statement of Charges, Rule 12(b), an Answer by the respondent-judge, Rule 13, and discovery, Rule 16.

13. Rules 19 and 20 set out the process for disciplinary hearings, including such issues as the applicable Rules of Evidence, Rule 19(c), burden of proof, Rule 19(d), the right to examine and cross-examine witnesses, Rule 19(e), fact and expert witnesses, Rule 20(a)(1), subpoenas, Rule 20(c), and the like.

14. Under both the statutory provisions governing the Commission, N.C. Gen. Stat. § 7A-374.1, *et seq.*, and its Rules, the Commission has no authority to issue any penalty or sanction and its recommendations are purely advisory.

15. Instead, the penalties and sanctions which may be imposed on a judge or justice – namely, "a public reprimand, censure, suspen[sion], or remov[al] – may only be imposed by the North Carolina Supreme Court "[u]pon recommendation of the Commission." N.C. Gen. Stat. §§ 7A-376(b); *see also* Rule 21(a).

16. In that case, at the conclusion of a disciplinary hearing conducted by the hearing panel, the "affirmative vote of at least 5 members of the hearing panel is required to make a recommendation to the Supreme Court that the Respondent either be publicly reprimanded, censured, suspended, or removed from office for misconduct or suspended or removed for disability." Rule 21(a). If fewer than 5 of the 7 members of the hearing panel vote to recommend action by the Supreme Court, "then the hearing panel shall dismiss the charges with prejudice." Rule 21(b).

17. In addition, by statute, the Commission's powers are "limited to reviewing judicial conduct, not matters of law." N.C. Gen. Stat. § 7A-377(a). Thus, the Commission is prohibited from considering, for example, constitutional challenges to its authority.

18. Rule 6 concerns the confidentiality of the Commission's proceedings. Those confidentiality protections are primarily designed to protect judges subject to investigations and disciplinary proceedings. The Rule, however, provides exceptions to confidentiality in Rule 6(b). Thus, for example, disciplinary action ultimately taken by the Supreme Court does not remain confidential. Rule 6(b)(1). In addition, the subject judge may "[u]pon an express written waiver," permit the Commission to "disclose documents or information." Rule 6(b)(2).

19. During my tenure as Chair of the Commission, we received hundreds of complaints each year. For example, in 2020, my final year as Chair, the Commission received 375 new complaints which were added to 57 matters carried over from 2019 (for a total of 432). Of that number, 64 matters were carried over into 2021, meaning that a total of 368 were disposed of in 2020.

20. The largest category of such dispositions was summary dismissal after initial review under Rule 9(a). A total of 283 complaints, nearly 77%, were dismissed that way. The second-largest category of dispositions was dismissal after preliminary investigations (54 in total or nearly 15%). In both of those circumstances, the subject judge would typically not even know that a complaint had been filed.

21. The next-largest category of disposed cases were those dismissed after a formal investigation (14 cases), and dismissed with a private letter of caution pursuant to Rule 11 (12 cases).

22. Statements of Charges, the action initiating a disciplinary proceeding (Rule 12(b)), were issued in just two cases (which were both pending hearing at 2020 year-end). The Supreme Court also undertook discipline in three cases. Thus, of the total number of cases disposed of in 2020, discipline was meted out with respect to 0.8% of complaints filed (3 of 368), which could have increased by a further 0.5% in the event the two cases with charges pending ultimately resulted in discipline.

23. Complaints about judges commenting upon legal issues or other matters of public concern, including the administration of justice and the court system, would be summarily dismissed as not falling into any category warranting discipline under the

Code.  In addition, such comments would often fall within the Code's Canon 4 which explicitly permits a judge to engage in activities concerning legal, economic, educational, or governmental system, or the administration of justice.

24. Another rule merits discussion.  Under Rule 9(e), "[u]pon dismissal of a complaint," the "complainant may request reconsideration" by the same investigative panel that dismissed the complaint, providing the complainant's request for reconsideration "includes new or additional information not previously considered by the panel."

25. Apart from that single exception, there is no provision in the Rules to reconsider or reopen a previously dismissed investigation.  During my tenure, no investigation of a previously dismissed complaint was ever "reopened" absent new or additional information from the original complainant as the Rules do not provide for that procedure.

26. Occasionally, a complaint against a judge might be dismissed only to be followed by another complaint based on different events.  In those cases, the second complaint and any related investigation would be considered separate from the earlier-dismissed inquiry and assigned a new inquiry number.

27. Any purported "reopening" of an investigation previously dismissed by an investigative panel would be highly irregular and contrary to both the Rules and practice of the Commission.

28. Finally, under Rule 11(a), the Commission has authority to issue a "private letter of caution" to a judge "upon a determination that the judge engaged in conduct in

7

violation of the Code that is not of such a nature as to warrant a recommendation of discipline by the Supreme Court" in order to "advise the judge to engage in remedial action that is necessary to avoid a continuation or recurrence of the conduct in violation of the Code."

29. I am not aware of any circumstance during my tenure in which the Commission, after determining to dismiss a formal investigation, nevertheless issued a "warning" to the subject judge. Such a warning, which would not meet the criteria for issuance of a private letter of caution, would also be highly irregular and contrary to both the Rules and practice of the Commission, particularly if the "warning" sought to circumscribe the judge's political speech.

30. I have reviewed the Declaration of Brittany Pinkham, sworn to on October 6, 2023, and filed in this matter. In that Declaration she states at ¶ 25, that the Commission's "investigation is limited to statements [Justice Earls] reportedly made that appear to accuse her Supreme Court colleagues of acting out of racial, gender, and/or political bias in some of their decision-making." I have also reviewed the interview of Justice Earls in *Law360* which is the subject of the investigation. At no point does that interview discuss any "decision" in any case (or category of decisions) of any member of the Supreme Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ___ of October, 2023, at Durham, North Carolina.

_____
Wanda G. Bryant

violation of the Code that is not of such a nature as to warrant a recommendation of discipline by the Supreme Court" in order to "advise the judge to engage in remedial action that is necessary to avoid a continuation or recurrence of the conduct in violation of the Code."

29. I am not aware of any circumstance during my tenure in which the Commission, after determining to dismiss a formal investigation, nevertheless issued a "warning" to the subject judge. Such a warning, which would not meet the criteria for issuance of a private letter of caution, would also be highly irregular and contrary to both the Rules and practice of the Commission," particularly if the "warning" sought to circumscribe the judge's political speech.

30. I have reviewed the Declaration of Brittany Pinkham, sworn to on October 6, 2023, and filed in this matter. In that Declaration she states at ¶ 25, that the Commission's "investigation is limited to statements [Justice Earls] reportedly made that appear to accuse her Supreme Court colleagues of acting out of racial, gender, and/or political bias in some of their decision-making." I have also reviewed the interview of Justice Earls in *Law360* which is the subject of the investigation. At no point does that interview discuss any "decision" in any case (or category of decisions) of any member of the Supreme Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 18 of October, 2023, at Durham, North Carolina.

*Wanda G. Bryant*
Wanda G. Bryant

8