# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### CIVIL ACTION No. 1:23-cv-00734-WO-JEP

ANITA S. EARLS,

        Plaintiff,

    v.

NORTH CAROLINA JUDICIAL
STANDARDS COMMISSION, *et al.*,

        Defendants.

**REPLY IN SUPPORT OF
MOTION TO DISMISS**

## ARGUMENT

### I. *YOUNGER* ABSTENTION REQUIRES DISMISSAL

Plaintiff opposes abstention on two grounds: (1) the Commission's investigation is not a civil enforcement proceeding, and (2) extraordinary circumstances warrant a departure from *Younger*. MTD Opp. 8–9, 13. Neither is persuasive.

#### A. Plaintiff Asks The Court To Enjoin A Civil Enforcement Proceeding

Plaintiff contends that the investigation is not a civil enforcement proceeding because the Commission lacks "the power to punish a judge" and its formal investigation has not proceeded to a disciplinary hearing. MTD Opp. 8. Those contentions cannot be squared with the Supreme Court's decision in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982), or relevant Fourth Circuit precedent.

Like the Commission's proceedings, the proceedings in *Middlesex* involved a multi-stage process to issue a recommendation for any disciplinary action. First, an Ethics

Committee member investigated any grievance complaint to help the Committee Chair determine whether to issue a complaint to the attorney. *Id.* at 426. Second, "[i]f a complaint [was] issued," the attorney was given "10 days to answer," after which the Chair would determine "whether a prima facie case exists." *Id.* Third, "[i]f a prima facie case [was] found, a formal hearing on the complaint [was] held before three or more members of the Ethics Committee," which would make a recommendation to the Disciplinary Review Board. *Id.* at 427. Fourth, the Board would undertake a *de novo* review and make a recommendation to the state supreme court for any public sanction. *Id.*; *see Garden State Bar Ass'n v. Middlesex Cnty. Ethics Comm.*, 643 F.2d 119, 123–24 (3d Cir. 1981) (providing additional detail).

The *Middlesex* plaintiff sought to enjoin the Ethics Committee proceedings after the Committee had issued to him a complaint, but before he had submitted an answer or the Committee had determined whether a hearing was warranted. *See* 457 U.S. at 428–29. As Plaintiff argues here, the Third Circuit reasoned that abstention was inappropriate because the Committee's proceedings were akin to the "pre-indictment stage" of a criminal proceeding and it "could do no more than recommend" sanctions. 543 F.2d at 128.

The Supreme Court disagreed. The Supreme Court emphasized the "unique nature of the relationship" between the Committee and the state supreme court, 457 U.S. at 435, explaining that the Committee was "the arm of the court in performing the function of receiving and investigating complaints and holding hearings." *Id.* at 433. On that basis, the Supreme Court rejected any distinction between the power of the Committee and the state court to issue sanctions and any distinction in the stage of the proceedings before the

2

Committee or that court: "From the very beginning a disciplinary proceeding is judicial in nature, initiated by filing a complaint with [the] ethics and grievance committee." *Id.* at 433 (citation omitted).

The Supreme Court's holding confirmed the Fourth Circuit's earlier ruling that *Younger* applied to an attorney's request to enjoin the South Carolina Bar's "investigation of the complaint" against the attorney. *ACLU v. Bozardt*, 539 F.2d 340, 342 (4th Cir. 1976). And consistent with those decisions, the Fourth Circuit has twice held that *Younger* applies to state grand jury proceedings despite the federal plaintiffs not yet being "under indictment" and the grand jury's inability to issue any criminal sanction. *Craig v. Barney*, 678 F.2d 1200, 1201 (4th Cir. 1982); *see Potomac Elec. Power Co. v. Sachs*, 802 F.2d 1527, 1531–32 (4th Cir. 1986), *judgment vacated on other grounds sub nom. Potomac Elec. Power Co. v. Curran*, 484 U.S. 1022 (1988). As with the Ethics Committee, the Fourth Circuit has recognized the unique relationship between state courts and grand juries, which "operate under the auspices of the judicial branch." *Potomac*, 802 F.2d at 1531 n.8.

The same reasoning applies here. The Commission, too, is "an arm of" the judicial branch that aids the North Carolina Supreme Court in its policing of judicial conduct. *In re Nowell*, 293 N.C. 235, 244 (1977). A lack of sanctioning power does not preclude the Commission's proceedings from being civil enforcement proceedings. Nor do *Middlesex*, *Bozardt, Craig*, and *Potomac* leave any room for a distinction based on the fact that the Commission initiated a formal investigation but has not yet determined whether to initiate a disciplinary hearing.

Plaintiff suggests the Fourth Circuit drew a line between investigations and post-indictment hearings in *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225 (4th Cir. 1989). *See* MTD Opp. 10–12. But Plaintiff reads *Telco* too broadly. The attorneys for Telco received a letter informing them that their client was being investigated by a state agency, after which Telco "requested a meeting" with the agency, waited for several months, then had "an informal fact-finding conference" with the agency in an attempt to settle. *Telco*, 885 F.2d at 1227–28. When those discussions failed, Telco filed suit. *Id.* at 1227. The Fourth Circuit held that *Younger* abstention was inappropriate. *Id.* at 1228.

Rather than drawing a line between a state proceeding's pre- and post-indictment phases, however, the *Telco* court distinguished the agency's informal investigation from the formal proceedings in *Middlesex* and *Bozardt*, in which the state disciplinary bodies— like the Commission here—had issued formal notices of violations and invoked their investigatory powers. *See id.* at 1228–29. The *Telco* court emphasized that the agency's invitation to a settlement conference did not trigger the state's power to compel the attendance of witnesses and the production of documents, *see id.* at 1228—unlike the grand jury investigations in *Craig* and *Potomac* and the Commission's formal investigations. *See* Comm'n Rule 10(d) (issuance of subpoenas during formal investigations), Rule 4 (contempt power); *accord* N.C. Gen. Stat. § 7A-377(a) (granting compulsory process and contempt powers).

Plaintiff's remaining authority is inapposite. In *Mulholland v. Marion County Election Bd.*, 746 F.3d 811 (7th Cir. 2014), the election board was not acting as an arm of the judiciary, making recommendations for the court to consider. The board could suggest

4

prosecution only to independent state prosecutors. *Id.* at 817. And in *Myers v. Thompson*, 192 F. Supp. 3d 1129 (D. Mont. 2016), the disciplinary body had only started an informal investigation at the time the plaintiff filed a federal lawsuit—"a complaint ha[d] not been filed." *Id.* at 1135–36.

**B.**     **There Is Nothing Extraordinary About The Commission's Proceedings**

Plaintiff no longer asserts that the *Middlesex* factors do not apply. MTD Br. 14–17. Plaintiff also does not claim that the Commission acted in bad faith or that the Code patently violates the First Amendment—the recognized exceptions to *Younger* abstention. MTD Br. 18–21; *see Air Evac EMS, Inc. v. McVey*, 37 F.4th 89, 96 (4th Cir. 2022). Instead, Plaintiff asks the Court to find that the Commission's "procedural irregularities" are extraordinary enough to warrant federal intervention. MTD Opp. 15. The Fourth Circuit has foreclosed such a finding.

"[T]he path to extraordinary circumstances is exceedingly narrow." *Air Evac EMS*, 37 F.4th at 100. "[T]here must be actual impediments to the state's ability to address the federal issues." *Id.* The district court in *Air Evacs EMS* did not abuse its discretion in finding an impediment to the state's review of the plaintiff's federal claim because there was evidence suggesting the agency had "prejudged the outcome" and "pursu[ed] [the] investigation … to squelch a constituent's competition." *Id.* at 102. But Plaintiff has abandoned the previous suggestion of any impediment to the State's ability to address her First Amendment objections. And Plaintiff never suggests any motivation the Commission would have for targeting Plaintiff. *See* MTD Br. 20. Thus, unlike the plaintiff in *Air Evacs EMS*, Plaintiff does not accuse the Commission of having any ulterior motive.

5

Plaintiff cannot meet her heavy burden to establish extraordinary circumstances merely by pointing to the "verbal warning" the Commission previously offered Plaintiff or to the Commission's decision to "reopen" its investigation. MTD Opp. 15. The Commission, when notifying judges of the dismissal of a complaint, often reminds judges about Code provisions that were implicated in the dismissed complaint. Pinkham 2d Decl. ¶ 3.[1] Plaintiff was just one of many recipients of such reminders. *See id.* ¶ 4. This practice is simply a continuation of the Commission's emphasis on providing guidance and education to judges. *Id.* ¶ 3. Far from nefarious conduct, the Commission's reminder was a harmless courtesy.

The Commission's decision to label the second investigation as a "reopening" of the prior investigation was a housekeeping matter. The Commission decided that the second investigation into Plaintiff's public statements could retain the same matter number because it started shortly after the dismissal of the first complaint about Plaintiff's public statements. *Id.* ¶ 4.[2] The number assigned to a matter is wholly immaterial. Plaintiff suffered no injury from the Commission's use of a prior matter number, and it does not justify an exception to *Younger*'s demands.

## II.     IN ANY EVENT, PLAINTIFF FAILS TO STATE A CLAIM

Plaintiff's responses on the merits are similarly unavailing.

---

[1] Plaintiff does not dispute that courts in the Fourth Circuit "tend to analyze *Younger* motions under Rule 12(b)(1) instead of Rule 12(b)(6)," MTD Br. 3 n.1, such that the Court may consider declarations.

[2] The fact that the Commission investigated Plaintiff "twice … within six months" is not a "procedural irregularity." MTD Opp. 15. The Commission did not control the timing of the initial complaint or the Article's publication.

6

## A. The Commission's Investigation Does Not Implicate The First Amendment

Most fundamentally, the Commission's investigation does not implicate the First Amendment. Even assuming the statements in the Article are fully protected speech, to violate the First Amendment, the government still must "abridge" Plaintiff's right to make them. And the Commission "violates no constitutional rights by investigating the circumstances" of Plaintiff's comments. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 628 (1986).

Plaintiff argues that she need not demonstrate an adverse action; it is sufficient to demonstrate only "*threatened* enforcement" of the canons. MTD Opp. 16–18 (citing, *e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). But that argument confuses Plaintiff's Article III standing to bring a First Amendment challenge with the merits of the First Amendment claim. A credible threat of enforcement establishes only standing to raise a First Amendment claim. The Commission has never disputed Plaintiff's standing.

But to prevail on the *merits* of a First Amendment violation claim, a plaintiff must establish not only a threat of state action, but also that the state action is sufficiently adverse to chill the speech of a "person of ordinary firmness." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). As Plaintiff acknowledges, that inquiry is an objective one. MTD Opp. 18. Numerous courts have recognized that neither an investigation nor an accompanying administrative proceeding is sufficient to meet that objective standard—even for private individuals. *See* MTD Br. 21–22; PI Opp. 8–10. That conclusion is bolstered by Plaintiff's position as an elected public official who willingly

7

subjected herself to the Code by running for judicial office. *See Hous. Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1261 (2022) ("[W]e expect elected representatives to shoulder a degree of criticism about their public service from their constituents and their peers—and to continue exercising their free speech rights when the criticism comes.").

Plaintiff cannot distinguish *Wilson* on the ground that the case concerned only a "purely verbal censure" issued by "other members of the same [elected] body." MTD Opp. 22. The "censure" at issue in *Wilson* was a "public resolution"—adopted by a formal vote of the elected body on which the plaintiff served—that reprimanded the plaintiff for protected speech that the body determined was "not consistent with the best interests of the [public] College" and "not only inappropriate, but reprehensible." 595 U.S. at 472. The Commission's confidential investigation here falls far short of such a public formal disapproval, which could only be issued by the state supreme court, the elected body on which Plaintiff serves.

Plaintiff's pre-*Wilson* cases are not to the contrary. The Commission's confidential investigation into a limited number of comments by a public official does not remotely approximate the extraordinarily intrusive and extended investigations of private citizens in *Clark v. Library of Congress*, 750 F.2d 89 (D.C. Cir. 1984), and *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000). *See Clark*, 750 F.2d at 91, 95 (describing the FBI's "five-part investigation" into the plaintiff's political beliefs and private matters, including well over a dozen interviews of the plaintiff's acquaintances and co-workers, examination of his high school and college records, research into his parents, siblings, and grandmother, and a credit check, among other things); *White*, 227 F.3d at 1228–29 (considering an

8

investigation that lasted eight months instead of the statutorily-prescribed 100 days, during which HUD officials convinced plaintiffs they had broken the law, conveyed that belief to local media, and coerced plaintiffs under threat of subpoena to produce certain publications and submit to interrogations). *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963), concerned a threat of criminal prosecution and did not interpret the "person of ordinary firmness" standard. And *Susan B. Anthony List* was a standing case that did not consider whether an investigation constituted an adverse action. 573 U.S. at 166.

## B. The Commission's Investigation Survives Strict Scrutiny

Even if the Commission's investigation were an adverse action, Plaintiff's claim would fail because the investigation is narrowly tailored to serve the State's compelling interest in maintaining the public's confidence in the integrity of the judiciary. Plaintiff does not dispute the State's compelling interest in preserving the public's confidence in the integrity of the judiciary, nor that this interest is undermined by unsubstantiated public allegations that a fellow judge is "acting out of racial, gender, and/or political bias" in their official duties. Instead, Plaintiff erroneously contends that the investigation does not serve this interest because no statements in the Article meet that standard. *See* PI Reply 4–5.

Plaintiff would require the Commission to justify sanctions before it has finished its investigation. But the Commission need not prove that any of Plaintiff's statements in the Article violated the canons to establish that its *investigation* is narrowly tailored to support the State's interest in preventing such violations. Despite the Commission's invitation, *see* PI Opp. 14, Plaintiff fails to identify a less speech-restrictive means to determine whether

9

a violation has occurred than a confidential investigation in which the judge is afforded

notice, the right to counsel, and the right to offer testimony and evidence.

Plaintiff errs in asserting that the Commission has failed to identify a "single factual

allegation that it believes deserves investigation." PI Reply 6. To be sure, the Commission

has explained—and reiterates here—that most of Plaintiff's comments raise no concerns,

including Plaintiff's expressions of concern about the lack of diversity and the Supreme

Court's discontinuation of certain initiatives. *See* MTD Br. 7–8; PI Opp. 4–5. But the

Commission has also explained that certain statements warrant further inquiry. It has

specifically identified, for example, remarks that could be read to suggest that some of

Plaintiff's colleagues "see themselves as a conservative block," pledge their "allegiance …

to their ideology, not to the institution," and treat Plaintiff differently during oral arguments

based on her race, gender, political views—or "the combination of all three." PI Opp. 4–5.

Plaintiff may believe that those statements do not violate any canon. But they are serious

allegations. There is plainly no "dramatic mismatch," PI Reply 5 (citation omitted),

between the Commission's decision to investigate these statements and the State's interest

in maintaining public confidence in the integrity of the judiciary.

## C. Plaintiff's Vagueness Arguments Fail

Plaintiff's argument that Canon 2A is unconstitutionally vague as applied to her

speech falters at the start. Neither the Commission nor the state supreme court has applied

the Code to any of Plaintiff's speech. And *Pullman* abstention requires federal courts to

allow state courts to resolve any ambiguities in state law that might raise constitutional

issues before reaching a federal constitutional ruling. *See* MTD Br. 22–23. Plaintiff provides no answer to those points, which are dispositive to any vagueness claim.

But in any event, Canon 2A is not unconstitutionally vague. The Supreme Court of North Carolina itself—in a decision that Plaintiff signed—has previously applied the Canon to accusations of racial bias by a judge. That decision provides the necessary "minimal guidance" of how the canon applies to speech, as required by the Constitution, and does so without expressing any First Amendment concerns. PI Opp. 17. Any remaining vagueness concerns are eliminated by the ability of judges to voluntarily seek and promptly receive advisory opinions from the Commission on the canons' application to any particular comment. *Id.*

The advisory-opinion process is not a prior restraint like the one in *Telco* that "require[d] solicitors to submit the script of an oral solicitation to the [State] at least ten days prior to" any solicitation for state approval. 885 F.2d at 1232. No judge is ever required to seek an advisory opinion from the Commission or obtain prior approval from the Commission to engage in speech. Seeking such an opinion is an optional step through which judges may seek guidance on a particular scenario and receive a safe harbor from any investigation or disciplinary action. Such voluntary avenues for additional guidance "mitigate" any vagueness concerns, not exacerbate them. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio S. Ct.*, 894 F.3d 235, 247 (6th Cir. 2018).

### D.     Plaintiff Cannot Satisfy The Elements Of Section 1983

Finally, even if Plaintiff could show a First Amendment violation, Plaintiff has not pleaded, and cannot plead, that the Commission's proceeding has terminated in her favor.

11

*See* PI Opp. 18–20. Plaintiff does not dispute that malicious prosecution is "the most analogous tort" to the Section 1983 claim asserted here. *Thompson v. Clark*, 142 S. Ct. 1332, 1337 (2022). Nor does Plaintiff dispute that favorable termination would be an element of the Section 1983 claim if she were seeking damages. Instead, Plaintiff argues only, without support, that the elements of a Section 1983 claim should be different where the plaintiff seeks only declaratory or injunctive relief. MTD Opp. 23. But declaratory and injunctive relief are "remed[ies], not … cause[s] of action." *Blankenship v. Consolidation Coal Co.*, 850 F.3d 630, 640 (4th Cir. 2017). A plaintiff's choice of remedy does not transform the elements of a cause of action.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice.

This the 1st day of November, 2023.

Respectfully submitted,

/s/ Craig D. Schauer
Craig D. Schauer (NC Bar No. 41571)
W. Michael Dowling (NC Bar No. 42790)
DOWLING PLLC
3801 Lake Boone Tr., Suite 260
Raleigh, North Carolina 27607
Telephone: (919) 529-3351
cschauer@dowlingfirm.com

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com

Jodie Herrmann Lawson (NC Bar No. 42900)
Katherine C. Richardson (NC Bar No. 56578)
MCGUIREWOODS LLP
201 North Tryon St., Suite 3000
Charlotte, North Carolina 28202
Telephone: (704) 343-2000
jlawson@mcguirewoods.com

*Counsel for Defendants*

13

## CERTIFICATION AS TO WORD LIMITATION

Pursuant to Local Rules 7.3(d), the undersigned hereby certifies this brief contains fewer than 3,125 words (as determined by the word count of Microsoft Word).

This the 1st of November, 2023.

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com

14

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1st, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Pressley Millen, Samuel Hartzell, and Raymond Bennett.

/s/ Jonathan Y. Ellis
Jonathan Y. Ellis (NC Bar No. 41220)
MCGUIREWOODS LLP
501 Fayetteville St., Suite 500
Raleigh, NC 27601
Telephone: (919) 755-6600
jellis@mcguirewoods.com